NEW YORK LIFE INS. CO. *v.* BRAME.

[73 South. 806, Division A.]

1. PLEADING. *Duplicity. Surplusage. Action on life insurance policy.*
   Where in a suit upon a life insurance policy the declaration alleged insured's seven years absence, which was on demurrer amended so as to charge also that insured was actually dead. Such a declaration was not defective as an attempt to recover in one court for both a common law cause of action and also a cause of action under section 1914, Code 1906, as to presumption of death, because the legal effect of the amended declaration was simply that the insured was dead and the allegation in regard to the seven years absence of insured was surplusage.

2. DEATH. *Presumption. Fine. Death. Statute.*
   Under Code 1906, section 1914, creating the presumption of death after seven years unexplained absence the burden of proof is upon the party interested in proving the death at any particular time, since in such case the law raises no presumption as to the precise time of death.

3. ACTION ON LIFE INSURANCE POLICY. *Limitations.*
   Where one insured under a policy providing for the payment to the beneficiary "upon receipt and approval of proofs of death," disappeared, and the insurance company, being notified, declined to send blanks for proofs of death, taking the position that insured was alive, and sent a detective to investigate and after the expiration of seven years the insurance company did furnish such blanks, but declined to pay the claim. In such case in an action on the policy although the jury found that death occurred the day of disappearance, yet the cause of action was not barred by the six year statute of limitations, under Code 1906, section 3097, since the wording of the policy of insurance gave to the beneficiary a reasonable time within which to make out proofs of death, and in such case a reasonable time, and in fact the only time, in which the beneficiary could make out

. such proofs was at the expiration of the seven years, when the beneficiary under Code 1906, section 1914, could take advantage of the presumption of death then arising.

4. Insurance. *Action. Interest.*

Where, on account of insured's unexplained disappearance, suit upon his life insurance policy, was not brought until after the expiration of seven years from such disappearance, and his policy provided for payment on "receipt and approval of proofs of death" of insured, and the jury found the death occurred on the day of disappearance, it was error to allow plaintiff the beneficiary to recover interest from the day of disappearance on the amount of the policy and premiums paid by insured before such disappearance, there being no receipt and no approval, and no proper rejection of proofs of death, until the filing of the suit, interest on such policy was only recoverable from the time when suit was brought.

Appeal from the circuit court of Hinds county.

Hon. W. H. Potter, Judge.

Suit by Mrs. Sue S. Brame against the New York Life Insurance Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*A. H. Longino* and *R. B. Ricketts,* for appellant.

The original declaration presented no cause of action for recovery on the contract of insurance as shown in this case and could not therefore be amended. The court should have dismissed the suit under the operations of plaintiff's first demurrer filed in said cause and it erred in failing so to do.

The second amendment of plaintiff's declaration was improperly allowed by the court because it was a clear departure from the original cause set up by the declaration. The cause of action first presented by the pleading, relied upon a special statute, whereas by the amendment referred to it seeks recovery under the contract contained in the policy. The plaintiff cannot depart from, but must sustain and fortify the case made in the original declaration. *Fisher* v. *Miss.*

*& Tenn. R. R. Co.,* 3 George, p. 359. An amendment cannot be made to a declaration which would thereby change the original proceedings from one cause of action to another. 31 Cyc., p. 414. Nor which seeks to forsake the matter or cause of action formally relied on for recovery. 31 Cyc., p. 415. The cause of action alleged in the original proceedings must be adhered to. 31 Cyc., p. 416.

The cause of action must be the same, and plaintiff cannot introduce by way of amendment an entirely new cause of action, but may add a new count different to that contained in the original pleading, provided he adheres to the original cause of action. *Y. & M. V. R. Co.* v. *Wallace,* 90 Miss. 609; *Mahan* v. *Smithman,* 71 Ala. 563; *Hanchey* v. *Bronson,* 56 So. (Ala.) 971; *Maxwell* v. *Harrison,* 8 Ga. 61; 31 Cyc., 49, 411, 413.

We maintain here, as we did to the other amendment above treated, that the plaintiff's original declaration presented no cause of action against the defendant on the policy in question, in view of the said contract between the parties, and was not therefore subject to amendment in either of the two particulars allowed in this case. It is common learning that a declaration cannot be given its first life and effectiveness by way of amendment. There must first be laid a legal foundation on which to predicate the suit. This rule seems to be sustained by the great weight of authority that if there is an entire failure to state a cause of action in the original pleadings, no amendment so as to state a cause of action is permissible. 31 Cyc., p. 407 and 408.

We admit that a defective statement of a good cause of action may be cured by amendment. *Mizell* v. *Ruffin,* 118 N. C. P. 69.

On page 52 of the record will be found the instructions given for the appellee. No instructions were given for the appellant, although nine were requested as will appear from the record, pages 53 to 56. The atten-

tion of the court is especially directed to the first, third and ninth instruction requested for the appellant.

By the first instruction for the appellee the jury were told that if they believed from the evidence that Lex Brame, Jr., died on August 8, 1907, they should find for the plaintiff in the sum of three thousand seven hundred ninety-six dollars and forty-four cents. By the second instruction the jury were told that if they believed from the evidence that Lex Brame, Jr., did not die on August 8, 1907, "they must nevertheless find for the plaintiff for the face of the policy with interest," and in the following form, "We the jury find for the plaintiff in the sum of two thousand seven hundred forty-two dollars and forty-three cents."

The jury found for the plaintiff in the form and for the amount named in the first instruction. It will be noted that the sole issue submitted to the jury was as to whether or not Lex Brame, Jr., died on August 8, 1907. The instructions together amounted to a peremptory instruction for appellee.

The action brought by Mrs. Brame, the appellee, in January, 1915, was barred by the provisions of section 3097 of the Mississippi Code of 1906. In this case the sole issue submitted to the jury under the instructions asked by the appellee was this: Did Lex Brame, Jr., die on August 8, 1907?

By their verdict the jury answered that question in the affirmative. To the securing of that affirmative answer all of the proof introduced by the appellee seems to have been directed. In fact, it seems that under the terms of the amended declaration, the appellee intended to charge that Lex Brame, Jr., died on that date.

The appellee asked this finding of facts at the hands of the jury. She got the decision sought. So far as this appeal is concerned and so far as the interests and rights of the appellee in this case are affected Lex Brame, Jr., died on August 8, 1907.

It is clear that if Lex Brame, Jr., did die on that date, the right of action of the plaintiff accrued some time in the year 1907, not later in any event than the date of the letter from the New York Life Insurance Company which appears in the record at page 258, in which letter the appellant refused to furnish to the appellee blanks for making proofs of death.

Just here we think it well to go into some discussion of the rule which is established by the great preponderance of authority with reference to the fixing of the time of death of a person who within the rule of the common law or under the provisions of some statute is presumed to be dead on account of his unexplained and long continued absence.

There is no presumption as to the time of death. In 13 Cyc., p. 304 (59) the rule is stated as follows: "The presumption of law is always in favor of the continuance of life, but this presumption is overcome by the presumption of death that arises in the case of a person who has been absent and unheard of for seven years. This latter presumption does not, however, arise until the full period has elapsed, and when it does arise there is no reason why it should have a retroactive effect so as to defeat the other presumption which was in full force during the waiting period." *Shaub* v. *Griffin*, 84 Md. 557, 136 Atl. 443; *Reedy* v. *Millizen*, 155 Ill. 638, 40 N. E. 1028; 1 Greenleaf on Evidence, sec. 41; Jones, Comm. on Evidence, sec. 61a.

This rule has been recognized by our own supreme court in several cases of which the case of *Spears* v. *Burton*, 31 Miss. 555, is probably the earliest. *Davie* v. *Briggs*, 97 U. S. 628.

Going somewhat beyond what we think we are called upon to show in order to maintain the position we have taken, we desire to call the attention of the court to the fact that the death of an absent person will, on the production of certain evidence be presumed in less than seven years from the date that he was last

heard from.    For a full discussion of this rule the attention of the court is respectfully directed to, 1 Jones' Comm., ib. Ev., sec. 63.

The discussion just referred to is thorough and, so far as we have been able to ascertain upon a careful examination of the cases on this subject, entirely in accord with the weight of authority.    We again call the attention of the court to the case of *Davie* v. *Briggs,* 97 U. S. 628.    On account of the many points in which the case just cited is like the present case and on account of the clear presentation of the line of reasoning by which Justice Harlan worked to the conclusion announced, the cited case is of great interest here.    *Springmeyer* v. *Sov. Camp,* 143 S. W. 872; *Metropolitan Life* v. *Lyons,* 98 N. E. 824; *Springmeyer* v. *Sov. Camp,* 129 N. W. 846; *Coe* v. *Nat'l Council,* Ann. Cas. 1916-B. 65.

Accordingly it is respectfully submitted for the appellant: (a) It was proper and indeed necessary for the appellee, in order to show that Lex Brame, Jr., died before the end of the seven-year period, to introduce proof tending to show that he was subjected to some great danger and proof tending to show that his character, domestic relations, affections and general disposition indicated that he would not stay away from if he were alive; (b) the appellee attempted to prove that Lex Brame, Jr., is actually and physically dead, and, further that he died on August 8, 1907; (c) the jury, on the proof introduced by the appellee and under the instructions, requested by and given for her, found that Mr. Brame died on August 8, 1907.    As already stated this finding is in this case, conclusive on the appellee; (d) Since Lex Brame, Jr., died on August 8, 1907, the Mississippi statute of limitations of six years bars this suit.

Again we direct the attention of the court to a quotation from *Davie* v. *Briggs,* 97 U. S. 633-4.    Of course, if there were no such thing as the six-year stat-

ute of this state, the additional interest to be gained would make it advantageous to the appellee to fix the date of Mr. Brame's death as August 8, 1907. Appellee asked the jury to find that Mr. Brame died on that date and they accordingly brought in a verdict to that effect.

Appellee waited too long before bringing her suit. Every word, practically, of the testimony offered by her in the present case would have been competent to support her claim if she had sued the appellant in 1908.

With the plea of the statute of limitations interposed, the trial court should have sustained the motion made by the appellant to exclude the evidence for the appellee and should have promptly given the peremptory instruction. The court should have extended back the demurrer to the plea of the statute of limitations and so have dismissed this suit at once. All of the actions of the trial court are assigned for error, here. See the sixth, seventh and ninth assignments.

It was error to give what amounted to a peremptory instruction for the plaintiff in this case. Where there are circumstances tending to rebut the presumption of death, the question whether the person is dead or alive is for the jury on all the evidence. 13 Cyc., 202 (L. V).

With the plea of the statute of limitations interposed the trial court should have sustained the motion made by the appellant to exclude the evidence for the appellee and should have promptly given the peremptory instruction. The court should have extended back the demurrer to the plea of the statute of limitations and so have dismissed this suit at once.

*George B. Power* and *L. Brame,* for appellee.

In the brief of opposite counsel, it is claimed that it was error to amend the declaration by adding to the alleged presumption of death, the allegations of fact as to actual death to be taken in connection therewith.

Counsel say this was changing the whole nature and character of the suit and cite authorities on this subject, but they are not applicable because there was no change in the nature or character of the suit and the whole of the allegations of plaintiff were consistent. She alleged and claimed from the first that her husband was dead and invoked the presumption; then she added to this the allegations of fact going to show that he was dead. There was no reason in the world why she should not rely upon either or both propositions to establish the main fact, namely, that the assured was dead and that the policy had matured.

We do not care to discuss the numerous authorities cited by counsel as to the matter of pleading, because we do not consider those authorities applicable. The true issue was at last reached to be determined, namely, whether the defendant was dead and whether the defendant could escape under the plea of the statute of limitations.

That the allegations of the plaintiff were full and explicit as to the presumption and the circumstances going to show the actual death, etc., was a benefit and not a disadvantage to defendant because it was thereby given the fullest notice of the issue it had to meet.

This case was fully and fairly tried in the court below. After the most careful and patient hearing, the learned judge on the law and the evidence concluded that two propositions were absolutely established and that these could not possibly be questioned, namely: (1) That the assured was dead. (2) That the defendant, by reason of its acts and conduct and the acceptance and retention of the premiums, was absolutely estopped to plead the statute of limitations.

It was proper for the court to instruct peremptorily as to these two propositions, because there was no evidence to the contrary of either of them upon which a verdict could have been sustained. If either, or both, of the propositions had been submitted to the jury

and a verdict had been rendered in opposition to the conclusions arrived at, it would have been incumbent upon the court to promptly set aside the verdict as unsustained.

Having arrived at these conclusions, which, as we have said, was inevitable under the evidence, it was the duty of the court to instruct the jury accordingly, and this was done, leaving nothing to it for decision except as to the time the death occurred. It was proper to leave this one fact open for the determination of the jury, and it was the only fact that was then legitimately subject to controversy or question. Both parties had the full benefit of offering evidence as to this.

On taking up either of the refused instructions the court will readily see that the same was properly refused, if the court was right on the two main questions, namely, that the assured was dead, and that the confessed act and conduct of the defendant, who was still holding the premiums, had been such that it was estopped to set up the statute of limitations.

Of course, the only purpose of submitting to the jury the determination of the question of the time the death occurred was to fix the date at which the right to calculate interest would begin.

It is not true, as contended, that the plaintiff had committed herself irrevocably to the proposition that the death occurred August 8, 1907. It is true that her attorney in correspondence with the New York officer of the defendant expressed the opinion that the evidence submitted showed that the death did occur August 8, 1907. But this was a mere opinion, and the facts was promptly and distinctly challenged by the company, which then took the position that the assured was not dead, and it held on to this contention up to the time it suited its purposes to reverse its position and turn upon the plaintiff with the plea of the statute of limitations. It was then and there only that the

defendant took the position that the death occurred August 8, 1907.

Was there ever a bolder or more shameless effort to defeat an honest debt by a mere subterfuge? It is contended and was contended in the court below that the policy of the defendant only obligated the company to pay in case of absolute proof of death, and that it was not bound by the plaintiffs, merely establishing the presumption of death in connection with the facts which were submitted showing, especially in the absence of any proof to the contrary, that the assured probably died or was killed on the night of August 8, 1907. It was gravely argued in the court below and is stated in the record that to compel the defendant to pay without direct, positive proof of actual death, would be violative of its rights under the fourteenth amendment of the Federal Constitution. With all due respect to counsel we regard this as mere sophistry.

The policy did not provide for direct positive proof of actual death but it is a promise to pay upon the proof of death. This proof could be established of course by circumstances, and it was established also by relying upon the presumption of death arising after the lapse of seven years.

The books are full of cases in which insurance companies have been made to pay on the basis of such presumption only. But when we take into consideration here, not only the strong proof of facts and circumstances going to show death, but also the presumption after the lapse of seven years, there is no room for the argument that there was not sufficient evidence to show that the policy had matured.

It is perfectly competent for an insurance company to provide in its policies that the loss will not be paid upon proof of mere absence, or upon the presumption of death based upon the lapse of time, but that positive proof or actual death shall be made.

In the *Keith Case,* 149 N. W. 225, heretofore cited in this brief, there was a policy to this very effect, but the change in the form of the policy in that particular case had been made after the death, and hence this does not effect the decision as an authority. We refer to this merely for the purpose of showing that the defendant could have put in its policy a stipulation which would have required proof of actual death but no such stipulation is in the policy.

We desire to call the attention of the court especially to the case of *Behlmer* v. *Grand Lodge* (Minn.), 26 L. R. A. (N. S.) 305, 123 N. W. 1071. We do not care to consider these separately or at any length The main case relied on by the defendant is *Davie* v. *Briggs,* 97 U. S. 628, 24 L. Ed. 1086. But that case does not militate in the slightest degree against anything for which we contend. In the first place, that was not an insurance case but related to the title to land.

In the next place there was not involved in it any question whatever of estoppel. The case simply states the doctrine that where one has been absent seven years without having been heard of, the presumption arises that he is dead, but there is from this proof no presumption of the time of death. This is a doctrine which we do not controvert. It is also set forth in 13 Cyc. 290. Notwithstanding the presumption and notwithstanding the facts that were introduced in evidence going to show that the death probably occurred on the night of August 8, 1907, there was nothing here to prevent the defendant, or either side, from proving as an absolute fact that the death occurred at a different time. It would have been perfectly competent for the defendant to have proved that the death occurred August 8, 1907, or five years later, or at any particular time. It was not shut off from making any such proof as it may have had as to the actual time of death. If it had been shown, for instance, that the death oc-

curred five years after the dissappearance, the only effect of this would have been to bind the company to pay interest from that time.

Here the proof undoubtedly shows that the assured was dead. It undoubtedly shows also that the defendant was, by its acts and conduct, estopped to rely upon any statute of limitations.

Then nothing was left under the instructions of the court except for the jury upon a consideration of all the facts and circumstances to decide when the death occurred, and the verdict fixed the time as of the date of the disappearance. This was solely a matter for the jury to decide under the evidence and the instructions of the court.

SYKES, J., delivered the opinion of the court.

Suit was instituted in the circuit court by Mrs. Sue S. Brame, plaintiff (appellee here), against the New York Life Insurance Company, based upon a policy of insurance issued by the defendant upon the life of Lex Brame, Jr., the husband of appellee, in which policy the appellee is the payee or beneficiary. By said policy the insurance company agrees to pay the beneficiary one thousand eight hundred dollars ''at the home office of the company, in the city of New York, immediately upon receipt and approval of proofs of the death of Lex Brame, Jr., the insured, and in addition thereto a sum equal to the annual premium on this policy, multiplied by the number of years this policy shall have been in force, including the year in which death occurs, provided such death shall occur before the twenty-seventh day of March in the year nineteen hundred and nineteen.''

The material averments of the original declaration necessary to be noticed by us for an understanding of this opinion are: That on August 8, 1907, Lex Brame, Jr., left Jackson, Miss., the place of his resi-

dence, on a business trip, from there going to Vicksburg, Miss. He disappeared in Vicksburg on the night of August 8, 1907, and has either remained beyond the sea or absented himself from this state, or concealed himself in this state successfully, for seven years without being heard of; that plaintiff spared no expense in her efforts to locate her husband, and kept up a search for him from the time of his disappearance until the filing of this declaration on January 16, 1915; that the fact of his disappearance was published in the newspapers far and wide, with descriptions of the missing man. Rewards were offered, and his photographs were scattered broadcast with the police departments over the country, and also with various fraternal organizations of which the said Lex Brame, Jr., was a member, but nothing has been seen or heard of the missing man since the night of his departure. Letters of executorship by the chancery court of the first district of Hinds county were granted plaintiff upon the estate of the missing man after he had been missing seven years. Plaintiff avers that on September 15, 1914, she furnished the defendant company properly authenticated copies of the proceedings of the chancery court above referred to; that she also furnished said company other further and additional proofs and all proper proofs required under the circumstances; that the defendant company, however, has failed and refused to pay the amount of said policy. Plaintiff demanded judgment for the one thousand eight hundred dollars together with interest thereon from August 8, 1907, and the further sum of two hundred eighty-six dollars and forty-four cents, premiums paid by Lex Brame, Jr., prior to August 8, 1907, with legal interest thereon from the said date, and the further sum of six hundred thirteen dollars and eighty cents, premiums paid by her with legal interest from the respective dates of payment. A demurrer was interposed to this declaration and sustained

by the court upon the theory that the declaration failed to allege the actual death of the insured. The declaration was then amended by an averment to the effect that the insured was actually and in fact dead and that he died on August 8, 1907. Various other pleadings were had in the case which are unnecessary to notice. A plea of the general issue to the amended declaration was filed, and also a plea setting up the six-year statute of limitations. A replication to the plea of the statute of limitations was filed, in which it was averred that the defendant was estopped by its conduct in receiving the premiums after it had full knowledge of the disappearance of the insured, and further averring that the statute did not bar this suit, because there was so much doubt and uncertainty as to whether or not Brame was dead that said fact could not be established until the expiration of seven years from the date of his disappearance, in order to give the plaintiff the benefit of the presumption of death arising at the end of this time. A demurrer was overruled to this replication.

The court, at the instance of the plaintiff, gave the two following instructions:

"(1) The court instructs the jury for the plaintiff that, if they believe from the evidence that Lex Brame, Jr., died on August 8, 1907, then the jury will find for the plaintiff for the face of the policy with six per cent. interest from that date, and also for all of the premiums paid by the said Lex Brame, Jr., prior to that date, at the tabular annual rate, with six per cent. interest thereon from August 8, 1907, and also for all of the premiums paid since August 8, 1907, at the tabular annual rate, with six per cent. interest thereon from the respective dates on which the same were paid, and the form of the jury's verdict would be: 'We the jury, find for the plaintiff in the sum of three thousand seven hundred ninety-six dollars and forty-four cents.'

"(2) The court instructs the jury for the plaintiff that, should they believe from the evidence that Lex Brame, Jr., did not die on August 8, 1907, they must nevertheless find for the plaintiff for the face of the policy, to wit, two thousand six hundred forty-nine dollars and seventy-five cents, with interest at the rate of six per cent. per annum from August 8, 1914, and the form of their verdict would be: 'We the jury, find for the plaintiff in the sum of two thousand seven hundred forty-two dollars and forty-three cents.'"

All instructions requested by the defendant were refused.

An examination of the two above instructions shows that the jury was first peremptorily instructed to return a verdict in favor of the plaintiff; second, that if they believed from the testimony Lex Brame, Jr., died on August 8, 1907, then they should assess the amount of recovery in accordance with instruction No. 1; third, if they did not believe the insured died on August 8, 1907, then their verdict would be for the plaintiff and the amount of damages would be assessed as if Brame died on August 8, 1914. The jury returned a verdict in accordance with the first instruction, which, in effect, means that they found that Brame died on August 8, 1907, viz. the night of his disappearance in Vicksburg.

The testimony introduced on the trial necessary to be referred to is: That Lex Brame, Jr., left his home in Jackson, Miss., on a business trip, expecting to be gone for only a day or two. He went from Jackson to Vicksburg, thence to Valley Park, and back to Vicksburg on the night of August 8, 1907. He talked to a number of friends and acquaintances between the time of leaving Jackson and the time he was last seen in Vicksburg. He seemed in good health and spirits. He had supper the night of his disappearance at a hotel in Vicksburg, in company with a friend of his from Jackson, after which they attended

a picture show. The friend then left to catch a train to return to Jackson. Brame requested him to telephone Mrs. Brame that he was alright and would be home the next day. A little while later Brame had a pleasant conversation with a friend of his, one Mr. Fitzgerald, in front of the hotel. At that time he was in good spirits and seemed alright. From his conversation with the friend with whom he took supper and with Mr. Fitzgerald it is inferred that Mr. Brame walked down under an electric light near the river or bayou in Vicksburg for the purpose of reading a book (The Wandering Jew). He has never been heard of since. He left in his room at the hotel his coat with mileage book and other papers and his grip. About six months after his disappearance his watch was found on a bank of the bayou, which at the time of his disappearance was under water. Some time after that his straw hat was found in the possession of a negro in Vicksburg. Mr. Brame was a lawyer by profession, a man of about thirty-six years of age, in good health. In addition to his wife he had two children. He was in partnership with his uncle, Judge Lex Brame, for whom he was named, in the practice of law. The firm was doing a good practice. His home life was happy and in every way agreeable. He was an affectionate husband and father. In addition to his law practice he had various real estate investments around Jackson. His liabilities amounted to eight or ten thousand dollars, but his assets at the time of his disappearance were amply sufficient to make him solvent. There is some testimony in the record that he was either guardian or administrator for some estate, and that as such he had received a trust fund of about two thousand one hundred dollars, which fund he had deposited to his credit in a bank, and had probably used in his private business. This accounting would have to be made in January, 1908, to the chancery court of Hinds county. From all the

testimony, however, we are thoroughly satisfied that Mr. Brame would have had no trouble in making this accounting in a proper way. In fact, at the time of his disappearance the testimony shows that he had almost consummated a sale of some land to a railroad company for a right of way which would have given him ample funds to have paid this money into the chancery court in January. All of the testimony introduced was by the plaintiff, the defendant offering none whatever.

The appellant contends that the case should be reversed, first, because the plaintiff in her declaration first attempted to allege a cause of action under section 1914 of the Code; and when a demurrer was sustained thereto she then alleged the fact of his actual death, which was, in effect, an attempt to recover in one count of a declaration for a statutory cause of action, and also for a common-law cause of action.

We think, however, that this point is not well taken because the legal effect of the amended declaration is simply that the insured is dead. It is true that there are a number of allegations contained in the declaration which are surplusage. All that the plaintiff need have alleged about the death was simply the fact of the death, and that plaintiff had sent the insurance company proper proofs of the same. It was proper for the court to have allowed plaintiff to amend her declaration.

It is next contended that the cause of action is barred by the six-year statute of limitation (section 3097, Code of 1906). This, to our mind, is the most serious question in the case. The suit was filed more than seven years after the disappearance of Brame. The jury found that there were facts and circumstances showing that Brame died on August 8, 1907, or more than six years before the filing of this suit. Section 3097, Code of 1906, provides:

"Actions to be Brought in Six Years.—All actions for which no other period of limitation is prescribed shall be commenced within six years next after the cause of such action accrued, and not after."

It is therefore imperative to ascertain when this cause of action actually accrued. The insurance policy provides that the insurance company agrees to pay the amount due under the policy "immediately upon receipt and approval of proofs of the death of the insured." The testimony in the case shows that shortly after the disappearance of the insured a full account of his disappearance was made by his uncle to the insurance company, giving the insurance company, all of the facts connected with the disappearance. In this letter to the company Judge Brame stated that, in his opinion, his nephew died in Vicksburg the night of his disappearance. A number of affidavits of witnesses, substantiating the facts and corroborating his letter, were also sent to the company at the same time. The defendant company has printed blanks which it sends to beneficiaries upon which to make out proofs of death. In this case the company declined to send these blanks, but took the position that it believed the insured to be alive. It also sent a detective down to thoroughly investigate the matter. The attorney for the plaintiff and other relatives of hers lent every assistance to this detective during his investigation, and gave him all the facts they had relating to the disappearance. The beneficiary herself declined to believe that the worst had happened. She believed that her husband was alive and would return home. As time passed she hoped against hope. Now and then there would come a rumor that her husband had been seen in New Orleans. This rumor was run down. Another that he had been seen in Hot Springs. This proved to be false. Thus matters went on until the expiration of seven years after the date of his disappearance. At that time another request was made of the insurance

company for blanks upon which the proof of death claim could be made. This time the company furnished them, but finally declined to pay the claim, which necessitated the plaintiff to file this suit. When the plaintiff first made a full report of the disappearance of her husband to the defendant and furnished it with affidavits about the same, upon the company's refusal to pay the claim at that time, one of two courses was open to her. Either she could accept the statement of the company that the proof of death was not satisfactory and try and strengthen the same, or she could have insisted that it was satisfactory and that the company absolutely refuse to accept her proof of death, and, if finally refused, then she could have instituted suit, in which event the burden of proof would have rested upon the plaintiff to prove the fact of the death of her husband, or her other course, and the one which she pursued, was to wait either until she could make more satisfactory proof of death or until the expiration of seven years when she could rely upon the common-law presumption of death which arises when one has been absent from his home without being heard of for seven years. In this latter event the plaintiff only has to prove the unexplained absence for seven years of the insured from his home, from which event the law presumes that he is dead. No presumption arises, according to the weight of authority, as to the time of the death. The burden of proof is upon the party who wishes to prove the death at any particular time within the seven years. This presumption of death arising from the seven-year absence may be, of course, rebutted by testimony. In this case there was no testimony tending to rebut the presumption of death. It was therefore proper for the court to instruct the jury, as a matter of law, that Lex Brame, Jr., was dead. As is said in 1 Greenleaf on Evidence (15 Ed.), section 41;

"Thus, where the issue is upon the life or death of a person, once shown to have been living, the burden

of proof lies upon the party who asserts the death. But after the lapse of seven years, without intelligence concerning the person, the presumption of life ceases, and the burden of proof is devolved on the other party."

"A person shown not to have been heard from for seven years by those, if any, who, if he had been alive, would naturally have heard of him, is presumed to have been dead, unless the circumstances of the case are such as to account for his not being heard of without assuming his death; but there is no presumption as to the time when he died, and the burden of proving his death at any particular time is upon the party who asserts it." Stephen, Digest of Evidence, art. 99.

The rule is thus briefly stated in Jones' Commentaries on Evidence, vol. 1, section 61:

"Like all other rules, it took its shape from necessity—the necessity of settling property rights and very often *status*. As the courts had to resort to the presumption of the continuance of life, in the absence of direct proof of life or death, in order to settle important rights which were often involved, it became equally necessary to adopt some counter presumption in classes of cases where the death of the person would in the ordinary course of events seem more probable than the continuance of life. Accordingly, in analogy to certain English statutes, the courts adopted the rule that 'a person, shown not to have been heard of for seven years by those (if any) who, if he had been alive, would naturally have heard of him, is presumed to be dead, unless the circumstances of the case are such as to account for his not being heard of without assuming his death.'"

In America this rule has generally been applied only to those who are absent from their home. The rule is thus stated in 8 R. C. L. section 5, p. 708:

"By the English common law, since James I, at the close of a continuous absence abroad for a period of

·seven years, during which nothing is heard ·from the person, death is presumed; but the presumption is open ·to be rebutted by· proof or counter presumptions. This is the rule very generally adopted in this country, either by statutory enactments or adjudications following the common law, and it is almost universally held· that for all legal purposes a presumption of his death arises from the continued and unexplained absence of a person from his home or place of residence without any intelligence from or concerning him for the period of seven years. The ·fact that the absent person is a fugitive from justice does not prevent the presumption from arising, but is admissible to rebut the presumption of death.''

''The view generally obtaining in England and followed by a number of courts in this country is to the effect that, in the case of an unexplained absence of a person for seven years, the law raises no presumption as to the precise time of his death.'' 8 R. C. L. section 7, p. 711.

''Opposed to the presumption of the continuance of life, and of sufficient force to overcome it, is the presumption of death which arises in the case of a person who has been absent from his last or usual place of residence and from whom no tidings have been received for a considerable length of time. The length of absence necessary to raise the presumption of death is not governed by any arbitrary rule, but, as some general rule is necessary, seven years have been usually established as the time, the lapse of which is sufficient to raise this presumption.'' 13 Cyc., pp. 297-298.

See also, note, 104 Am. St. Rep. 198.

Had Mrs. Brame instituted this suit before the expiration of the seven years, the fact of proving the actual death of her husband would have devolved on her. The insurance company elected at that time to treat these proofs as not being ·satisfactory. Mrs.

Brame was not willing to risk a lawsuit at that time, and she therefore did not take issue with the insurance company on this question, but continued to pay the premiums on the policy for a period of seven years. It was impossible for Mrs. Brame to have made any other or more satisfactory proof of death before the expiration of the seven years than she had already made. She was unwilling to bring the matter of collecting this policy to an issue with the insurance company before the expiration of this period. She therefore did not insist upon the company finally approving or rejecting her proof of death until this time. While there are a number of cases cited by counsel on both sides to sustain their various contentions, very few of these cases are in point upon this exact question. Most of the cases cited by appellant are cases where the testimony tended to show that the absent party had died at a particular time and in a particular way. The testimony in two of these cases, for example, showed that the absent parties had been traced by their footprints to the banks of rivers a few days after their disappearance. And in those cases there was ample testimony for a jury to have found a few days after the disappearance that these parties were drowned. Other cases are where persons embarked on vessels which encountered storms and the ships were not heard of after that time. Another case is where a man disappeared from a steamboat and the testimony showed that it was impossible for him to have lived in the water but a few minutes, and his absence could not be explained in any other manner except that he had either jumped or fallen overboard. To this effect are the following cases: *Davie* v. *Briggs*, 97 U. S. 628, 24 L. Ed. 1086; *Harvey* v. *Insurance Co.*, 200 Fed. 925, 119 C. C. A. 221; *Coe* v. *National Council, etc.*, 96 Neb. 130, 147 N. W. 112, L. R. A. 1915B, 744, Ann. Cas. 1916B, 65.

In the case at bar, however, without the aid of the presumption of death, a jury would not have been authorized, nor would a court have permitted a verdict to stand, which found that the insured died on the night of his disappearance in Vicksburg. It is only when the facts of the disappearance are considered in connection with the time of his absence that a jury is authorized in finding as they did in this case.

The action of the defendant company in refusing to pay this claim in the first instance, on the ground that Brame was not dead, and that no satisfactory proofs could therefore be furnished it at that time, and the acquiescence by the plaintiff in this decision of the defendant prevented the cause of action from accruing at that time and continued the matter in abeyance. A somewhat similar case is that of *Keith* v. *Modern Woodmen, etc.,* 167 Iowa, 239, 149 N. W. 225, L. R. A. 1915B, 793. In the Keith Case the insurance company was notified of all of the facts and circumstances relating to the disappearance of the insured, and upon being requested by one of the beneficiaries as to what they should do, an officer of the company wrote them, in effect, that if they believed their father was dead, it would probably be worth while to keep his certificate in force for the next six years, as it was customary for the company to pay a claim after a continuous disappearance of seven years. The court in that case held that the insurance company was estopped from pleading the six-year statute of limitations.

A case, however, very much like the one under consideration is that of *Behlmer* v. *Grand Lodge, A. O. U. W.,* 109 Minn. 305, 123 N. W. 1071, 26 L. R. A. (N. S.) 305 In that case the insured, Behlmer, disappeared. His wife paid the premium on his insurance policy for one year. She then waited six years, or until seven years had elapsed since his disappearance, and requested the company to furnish proper blank forms on which

to make proofs of death. The company declined to do so, and she filed suit. The company interposed a plea of the six-year statute of limitations. The insurance certificate in that case provided that proofs of death of any member should be furnished by the beneficiary and filed with the grand recorder before the lodge would in any way be liable. The jury found that the insured died during the life of the policy. We quote from the opinion of the court as follows:

"The question before the court then turns upon wheth‧ er respondent was compelled to act upon the evidence of death available at the time she stopped payments, or whether it was permissible for her to avail herself of all the circumstances surrounding the case not only prior to July 29, 1902, but in addition thereto evidence growing out of the presumption arising from seven years' absence of the insured. If she was limited by the terms of the contract to the evidence before her at the time she stopped payments, then, in our opinion, she failed to present the proofs within a reasonable time; but if, under any permissible construction of the contract, she had the privilege of waiting until the presumption of death arose before submitting the proofs of death then she offered to present proofs, and commenced this action within a reasonable time after such presumption accrued, and the action is not barred.

"Much may be said on both sides of the question; but a majority of the court are of opinion that respondent was not restricted to the evidence available to her at the time she stopped making payments on the certificate, July 28, 1902, for the reason that, while such evidence seems to have satisfied her that her husband was dead, yet there was then no known evidence by which his death could have been legally established. An attempted proof of his death before the expiration of the seven years would have been necessarily insufficient, a nullity. A party is not bound to do a useless thing. The certificate did not require the proofs to be

filed within any particular time, and hence a reasonable time, in view of all the circumstances of the case, was a compliance with the contract. In an ordinary case of death, where the proofs to establish it are available, there is no reason for the application of the rule of evidence growing out of the presumption of death after seven years' disappearance, and in such case the beneficiary would be bound to furnish the proofs within a reasonable time, which might be a few days, weeks, or months, according to the circumstances; but in a case where there is no positive evidence, and death can only be established with the aid of the presumption after the period of seven years has elapsed, why should the beneficiary be required to make out a case from proofs which are necessarily incomplete?

"Appellant insist that, in the absence of any provision in the contract limiting the time within which the proofs must be filed, reasonable time is to be measured by the statute of limitations, viz. six years, which in this case expired July 29, 1908, that in no case has the beneficiary more than six years from the date of death to file the proofs thereof, and that the action must be brought within a reasonable time thereafter. According to this construction, all certificates become void if proofs are not furnished within six years from the date of death. Is that the meaning of this contract? Such associations are organized for the express purpose of providing a beneficiary fund for those members who contribute for the benefit of the beneficiaries in other certificates, and unless it clearly appears from the language of the contract that it was intended to cut off, without relief, those cases where evidence of death cannot be secured within six years, such construction should not be adopted. It is manifestly just that beneficiaries who have paid the assessments up to the time of the death of the insured should receive the reward for carrying the burden. When, from the circum-

stances, the presumption arising from seven years' absence is necessary to complete sufficient proof of death, reasonable time to present such evidence after it accrues is necessary in order to make the certificate of any value to the beneficiary.

"We believe the proper construction of this class of contracts to be that a cause of action does not arise until proofs of death are furnished, and that the time for furnishing the same is not limited to six years from the time of death, but shall be made within a reasonable time after death, according to the circumstances of each particular case, and it is our opinion that the fair and reasonable meaning of the contract is that the parties intended that the beneficiary should have the benefit of the evidence of death arising from the disappearance of the insured for the period of seven years, other evidence of death being in itself insufficient, that respondent did not waive this right by assuming that the insured was dead, and in stopping payments, but that she tendered the proofs and commenced the action within a reasonable time after the evidence accrued."

In a case of this kind it is necessarily uncertain whether or not the insured is dead. It is therefore impossible for the beneficiary to make out proper or satisfactory proofs of death until the expiration of the seven years, unless there are such facts and circumstances surrounding the disappearance as would strongly point to the insured having met his death at that time. To this class of cases belong those above referred to, where the facts indicated that the insured had been drowned or had been killed in a battle or in a storm. In cases like the one at bar, where both the insurance company and the beneficiary were uncertain as to the fact of the death, it would be harsh, inequitable, and unjust to hold that the statute of limitations was applicable. The very wording of the policy of insurance, as above set out, gives to the beneficiary a reasonable time within which

to make out proofs of death; and in the case at bar, a reasonable time, and the only time, in fact, at which she was ever able to make out these proofs was when she was able to take advantage of the presumption of death arising at the end of seven years.

The lower court was in error, however, in granting its first instruction to the jury, in this respect only: That instruction authorized the jury to allow the plaintiff to recover interest at the rate of six per cent. on the amount of the policy and the premiums paid by the insured before August 8, 1907. The insurance in this policy only promised to pay the same after receipt and approval of proofs of death. There was no receipt and no approval, and no proper rejection of these proofs of death, until the filing of this suit on January 16, 1915. No interest is recoverable, therefore, on the amount named on the face of the policy and on the premiums paid by Lex Brame, Jr., until after January 16, 1915. The judgment of the lower court allowing interest on the premiums paid by appellee from the date of payment was correct.

The judgment of the lower court will be set aside, and judgment entered here in favor of appellee in accordance with this opinion.

*Affirmed.*