## Stone's Estate

*Charles F. Dean,* for accountant.

*H. C. Brandt,* for exceptant.

Cox, J., December 6, 1946.—Lieutenant Robert B. Stone, a minor, was a member of the air corps of the United States Army. The plane in which he was a navigator failed to return from a bombing expedition over Germany on January 1, 1944. He was declared to be missing in action by the Army authorities, who later certified him to be presumably dead under the provisions of the Federal Missing Persons Act, and fixed January 1, 1945, as the date of his presumptive death.

Decedent was credited with the sum of $2,142.85 in his account with the Government, representing an accumulation of pay and allowances earned during the period between the date he was missing in action and the date of his presumed death.

The Government paid $500 of this amount to his mother and the balance, $1,642.85, to the administrator of his estate. This sum is the sole asset of his estate.

At the audit of his estate the Commonwealth of Pennsylvania presented a claim for inheritance tax on the balance of the estate for distribution. The auditing judge sustained the contention of the accountant that the fund was not taxable and dismissed the claim. Exceptions were taken to the decree of the auditing judge by the Commonwealth and the matter came before the court en banc.

One of the casualties of war is the soldier who is missing in action. In some instances his fate is ascertained. He has been separated from his comrades and returns; he has become a prisoner of the enemy; he has been injured; or he has been killed. In other in-

stances his ultimate fate can never be conclusively ascertained.

The Federal Government has resolved the problem of determining the relationship of the soldier who is missing in action to the Government by statutory enactment. Under the provisions of the Federal Missing Persons Act of March 7, 1942, 56 Stat. at L. 143, as amended by the Act of July 1, 1944, 58 Stat. at L. 679, the pay and allowances of the missing soldier are continued until a change has been made in his status.

His status of missing in action must ultimately be terminated. Congress has provided, therefore, in section 5 of the Act of March 7, 1942, supra, as amended by the Act of December 24, 1942, 56 Stat. at L. 1092, as follows:

"When the twelve months' period from date of commencement of absence is about to expire in any case of a person missing or missing in action and no official report of death or of being a prisoner or of being interned has been received, the head of the department concerned shall cause a full review of the case to be made. Following such review and when the twelve months' absence shall have expired, or following any subsequent review of the case which shall be made whenever warranted by information received or other circumstances, the head of the department concerned is authorized to direct the continuance of the person's missing status, if the person may reasonably be presumed to be living, or is authorized to make a finding of death. When a finding of death is made it shall include the date upon which death shall be presumed to have occurred for the purposes of termination of crediting pay and allowances, settlements of accounts, and payments of death gratuities and such date shall be the day following the day of expiration of an absence of twelve months, or in cases in which the missing status shall have been continued as hereinbefore au-

thorized, a day to be determined by the head of the department."

In the instant case this procedure was followed by the Government. The status of decedent, missing in action, was changed to the status, presumptively dead. The date of his presumptive death was fixed as January 1, 1945.

The cauldron of war has left an aftermath of problems which can only be solved by the application of practical common sense. It is true that no one can prove with certainty the existence or nonexistence of Robert B. Stone. Furthermore, if he is dead, we do not know the date of his death. The Government, in the manner and for the purposes which we have detailed, has legally determined that he died on January 1, 1945. This finding may become conclusive, unless additional facts are ascertained which will refute it.

What, then, is the effect of the statutory provisions on the status of the fund? The Government gave to Robert B. Stone prior to January 1, 1945, the status of a living person and credited to his account pay and allowances which are the source of the fund. Ordinarily, the pay and allowances which are credited to a soldier are compensation for services performed by the soldier. They are not gratuities but earnings. If the soldier dies after he has earned his compensation, the payment by the Government of the money which has accrued to his credit is a payment of money owing to the soldier, and is in no sense the payment of a gratuity.

The present fund is an accumulation of pay and allowances, accrued to the credit of decedent during a period in which the Government has by statute given him the status of a living person. The status of the fund is identical with the status of decedent who earned it.

The relationship which existed between the Government and the estate of decedent was that of debtor

and creditor. The payment of the fund to the administrator was the payment of a debt owing to decedent, and differs in no respect from the payment of any debt by a debtor to a creditor's estate. The receipt of the fund by the ultimate distributees arises because of their relationship as heirs of decedent. They will receive it because it was the property of decedent and not because it is a gift or gratuity created by the Government.

The fund was paid to the administrator in accordance with the provisions of the Act of June 30, 1906, 34 Stat. at L. 697, 750, as amended by the Act of December 7, 1944, 58 Stat. at L. 795.

Counsel for the Commonwealth contends that the fund is taxable under the following provisions of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended by the Act of July 14, 1936, P. L. 44, 72 PS §2301:

"A tax shall be, and is hereby, imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom in trust or otherwise, to persons or corporations in the following cases:

"(a) When the transfer is by will or by the intestate laws of this Commonwealth from any person dying seized or possessed of the property while a resident of the Commonwealth, whether the property be situated within this Commonwealth or elsewhere."

Counsel for accountant asserts that the fund is not taxable under the provisions of the Transfer Inheritance Tax Act, supra, in that the fund is not transferred by will or by the intestate laws of the Commonwealth, but by Act of Congress. He specifically points to the language of the Federal act which provides that the fund is to be paid to the duly appointed legal representative of decedent's estate, if demanded, or $1,000 of the amount due may be paid to decedent's widow or legal heirs in order of precedence when a demand has not been made by the duly appointed legal representa-

tive of decedent's estate, and urges that these provisions create a transfer by Act of Congress.

The fund in question having been paid to the legal representative, we do not deem it essential to our decision to consider the effect of the alternative provisions for payment to the widow or legal heirs of decedent, but will confine our discussion to the specific facts of this case. We do this because we are of the opinion that the provisions of the acts applicable to a transfer of the fund to the widow or legal heirs do not affect the quality of the transfer of the fund to the administrator.

Congress intended by the passage of the act to facilitate the settlement of the accounts of a member of the Army who had died. In determining the best method of accomplishing this purpose, Congress undoubtedly recognized the confusion which would result from the ordinary attributes of human nature. People are uninformed; they lack sources of information; they are negligent; therefore, in order to make certain that the accounts were settled as quickly as possible they provided a method which was uncomplicated and certain.

Congress did not intend, by providing for the payment of the funds accrued to the credit of a deceased soldier to his duly appointed legal representative, to effect a transfer of the funds contrary to the established law of the several States. The very fact that the act directs payment to the duly appointed legal representative is an expression of this intent. If Congress had intended otherwise, the provision for payment to the duly appointed legal representative would have been followed by other provisions which would have named the persons who were to receive the fund. By the term "duly appointed legal representative of the decedent's estate" Congress intended the appointment of the proper person designated under State laws, who

would transfer the fund in accordance with the provisions of the State law.

In Pennsylvania, the duly appointed legal representative could mean a trustee durante absentia, an executor, or administrator, depending on the manner in which the status of decedent would be viewed under the laws of this State.

In our opinion, the provision of the Federal act providing for the payment of the fund to the legal representative is only directive and was not intended as a transfer of the fund in the sense that it is used in the Transfer Inheritance Tax Act. The administrator is only a conduit through whose agency the actual transfer of the fund is to be made in accordance with the provision of the laws of the respective States which effect the transfer. In Pennsylvania the transfer is effected by the Wills Act or the Intestate Act.

Decedent in this case was a minor, and the funds will be transferred under the provisions of the Intestate Act of Pennsylvania.

We believe it to be significant, also, that Congress did not, in any statute which we have been able to find or which has been called to our attention, provide that this fund should be free from Federal or State taxation. Congress has so provided in the case of payment of other funds. Furthermore, Congress did not exempt the entire earnings of a soldier from the payment of income tax. This fact is significant in determining the intent of Congress relative to the general taxability of this fund. Governments, Federal or State, must be sustained by taxation; otherwise, they cannot exist.

In determining if this particular fund is taxable, we must consider carefully the intent of the legislation assessing the tax, and, if the fund comes within the purview of the legislation, its freedom from taxation must be proven by the express provisions of the statutory law. In the instant case, we believe the fund comes within the provisions of the Transfer Inheritance Tax

Act, and no such statutory provision has been pointed to which will exempt the fund from taxation.

Counsel for accountant has also contended that this fund is an asset of the estate of a presumed decedent, and therefore is not taxable. The position of counsel is unique, in that he has elected to treat this estate during the entire course of its settlement as the estate of an actual decedent. He would now have us distribute it as the estate of an actual decedent, and at the same time free it from taxation as the estate of a presumed decedent. We cannot under any express or implied provision of the law give the fund this dual status. It must be one or the other.

The real problem which counsel raises, that is, the exact status of the estate of a member of the Army or Navy who has been certified to be presumably dead in accordance with the provisions of the Federal Missing Persons Act of March 7, 1942, 56 Stat. at L. 143, is one which has troubled every court in this Commonwealth. The Act of April 10, 1945, P. L. 187, recognizes this problem and provides, inter alia, as follows:

"To provide for the receiving, as evidence in any court, office, or other place in this State, official findings, records, reports, or certified copies thereof, of death, presumed death, missing, or other status issued by the Secretaries of War and Navy, and other Federal officers and employees.

"The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows:

"Section 1. A written finding of presumed death made by the Secretary of War, the Secretary of the Navy, or other officer, or employee of the United States authorized to make such finding pursuant to the Federal Missing Persons Act (56 Stat. 143, 1092 and Pamphlet Laws, 408 Ch. 371, 2d Sess. 78th Cong. 50 U. S. C. App. Supp. 1001-17), as now or hereafter amended, or a duly certified copy of such finding shall be received in any court, office, or other place in this

State as *prima facie* evidence of the death of the person therein found to be dead, and the date, circumstances, and place of disappearance." (Italics supplied).

In the instant case, the Government has certified the presumed death of decedent. The presumption of death has not been refuted by any credible evidence which rebuts the prima facie evidence of the certification of presumed death. On the basis of these facts the court may, under the provisions of the Act of 1945, hold that decedent is dead in fact. When such a finding has been made, the estate will be settled in the same manner as the estate of any person who is deceased.

In the instant case, letters of administration were issued on the estate of decedent by the register of wills. The issuance of letters implies a finding of actual death, which finding, together with the other incidents of administration, we ratify.

We believe, however, and we base our belief on the knowledge of innumerable cases of military personnel who have been given up for dead, and who have returned to society, that every attempt should be made by the courts to protect from loss the estates of military personnel who are presumably dead, so that their estates may be returned to them in the event of their return. In the present case, such protection can be obtained by requiring a refunding bond from the distributees.

In treating this estate as that of an actual decedent we do not infer that we are establishing a pattern for all cases. Each case is a problem in its own right, and the ultimate determination of its status must be made on the basis of the facts and circumstances surrounding it.

For the reasons set forth in this opinion we find the estate of decedent taxable for inheritance tax purposes under the provisions of the Pennsylvania Inheritance Tax Act, and we therefore sustain the exceptions of the Commonwealth.