HAYNES *v*. METROPOLITAN LIFE INSURANCE COMPANY

[No. 403, September Term, 1970.]

*Decided May 18, 1971.*

256

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN, SINGLEY and DIGGES, JJ.

*Jan A. Obst* for appellant.

*Alan N. Gamse,* with whom was *James D. Peacock* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

On December 7, 1963, Sergeant James Lee Haynes disappeared without a trace. He was on leave from active duty with the Army in Germany and had set out to hitchhike from his home in Baltimore to visit his parents in Maben, West Virginia. The Army and state police, upon notification that he was missing, conducted an extensive investigation but unearthed not one iota of evidence indicating an accident, foul play, or a voluntary absence without leave from the Army or his wife, Theda R. Haynes, the appellant.

Pursuant to Title 37 U.S.C., §§ 555-56 (Supp. V, 1965-69), the Secretary of the Army issued a Statement of Casualty, indicating the sergeant was presumed to be dead and setting the date of death as December 8, 1964, a year and a day from his disappearance. On December 17, 1964, the appellant presented the Army's finding to the appellee, the Metropolitan Life Insurance Company, in an attempt to collect on a life insurance policy it had issued to her husband, but the claim was denied on the grounds that proof of death was both insufficient and premature. Following the company's advice, Mrs. Haynes continued paying premiums and eventually obtained a decree and finding of presumed death from the Circuit

Court for Anne Arundel County in accordance with the Maryland Uniform Absent Persons' Act, Code (1957, 1966 Repl. Vol.), Art. 16, §§ 200-12, on December 20, 1968. Upon presentation of this decree to the company, all unearned premiums were refunded and all sums possibly due under the policy, except for interest, were paid in full for a total of $14,392.35. The present suit is for $3,725.83 interest the beneficiary claims has accrued on that sum from December 8, 1964 to March 31, 1969, the date of payment.

On a motion for summary judgment the insurance company resisted this claim, asserting that no interest had accrued since it had paid in full when the proceeds of the policy were due, specifically, upon presentation of the decree and finding of death. The Circuit Court for Anne Arundel County (Childs, J.) concurred in this reasoning and Mrs. Haynes has appealed. We shall affirm.

The appellant's principal argument is that summary judgment should not have been granted as a matter of law because there was a dispute over a critical fact of the case, the date from which interest should run. We frankly see little factual controversy here, but before addressing ourselves to that issue we shall discuss the contract and statutory provisions which bear on the general question of the insurance company's liability for interest in a case such as this.

The contract provision which governs the outcome of the appellant's case is this brief and unobtrusive clause in the insurance policy:

> "The amount payable in the event of death of a person insured under this policy will be paid, upon *receipt of due proof of such death.*" (Emphasis added.)

Clauses similar to this have been construed to mean that interest on the proceeds of a life insurance policy should not begin to run from the date of death or loss but from the date when proceeds are due and payable, normally the date of furnishing proof of death. *Crook v. N. Y. Life*

*Ins. Co.,* 112 Md. 268, 75 A. 388 (1910) ; 3 Appleman, *Insurance Law and Practice,* § 1583 (rev. ed. 1967) ; 46 C.J.S. *Insurance* § 1391 (1946). In a case where death can only be presumed by seven years' absence, it has been held that the insurance company is not liable for interest at least until the presumption, which is the only proof of death, has taken effect. *New York Life Ins. Co. v. Brame,* 112 Miss. 828, 73 So. 806, 811 (1917) and 112 Miss. 859, 73 So. 812 (1917) ; 44 Am.Jur.2d, *Insurance,* § 1593 (1969).

What constitutes "due proof" has been the subject of extensive judicial comment. In *Richardson v. Life Ins. Co.,* 162 Md. 292, 297, 159 A. 585 (1932), Chief Judge Bond, speaking for the Court, said:

> " 'It may be stated, however, as a general rule, in the absence of some policy or statutory requirement to the contrary, that sufficient proof of death is made by evidence in any form which is substantial and trustworthy enough to enable the insurer to form an intelligent estimate of his rights and liabilities under his contract.' 5 *Joyce, Insurance,* Sec. 3277; 7 *Couch, Insurance,* sec. 1516; *Griffin v. Northwestern Mut. Co.,* 250 Mich. 185, 188, 229 N. W. 509."

The Municipal Court of Appeals for the District of Columbia has written:

> "According to the rule in the federal courts the 'due proof' called for in such policies is not, in the absence of express language, required to be in any particular form. The purpose of the requirement is merely to give the insurer a reasonable opportunity to investigate and test the validity of the claim. The proof need not be such as to satisfy the company of the existence of the disability, but need only be such as would, if reasonably established in court, make out a prima facie case requiring payment of the

claim." *National Life Ins. Co. v. White,* **38 A.** 2d 663 (1944).

Also see *John Hancock Mutual Life Insurance Co. v. Highley,* 445 P. 2d 241 (Okla. 1968) and *Levine v. New York Ins. Co.,* 155 Misc. 806, 280 N.Y.S. 468, 472, *aff'd mem.,* 246 App. Div. 703, 285 N.Y.S. 532 (1935).

The statutes which bear on the legal effect of "receipt of due proof" in this case are Maryland Code, Art. 96½, § 43 (1957, 1964 Repl. Vol.); the Uniform Absent Persons' Act, Code, (1957, 1966 Repl. Vol.), Art. 16, §§ 200-12 and Title 37 U.S.C. §§ 555-56. Sections 555-56 are the descendants of the now defunct World War II "Missing Persons Act," which may still be found in Title 50, U.S.C. App. § 1005 (1964). The two sections of the present statute, which must be read in tandem, relate only to members of the military services and require the appropriate Secretary or his designee to make a finding of death, "when he considers that the information received [concerning the disappearance], *or a lapse of time without information,* establishes a reasonable presumption that a member in a missing status is dead . . ." (emphasis added) § 556 (b). The Secretary is not required to find that the absentee is dead, for he can "direct a continuance of his missing status." § 555 (a) (1). But if he does the date of death must be set at a year and a day after disappearance for the purpose of ending pay and allowances, settling accounts and paying death gratuities. § 555 (b). "Missing status" is not limited to a situation in which the person is reported missing in action. § 551 (2) (A) and (B).

The insurance company argues, citing *In re Estate of Thornburg,* 186 Ore. 570, 208 P. 2d 349, 352 (1949), that the effect of the Secretary's finding of presumed death should be limited to the administrative purposes for which it was designed, but we question the soundness of this contention or the breadth of the dicta in that case. The only element of the Secretary's finding which is an arbitrary administrative act is the required setting of a convenient time to close the books on the absentee. We

need not comment, however, on the finding's inherent value as evidence, for what respect it must be given in a non-federal proceeding has been regulated by state statutes. This was the situation in the *Thornburg* case, where an Oregon statute accorded the finding "prima facie probative value in evidence." Also see *Stone's Estate*, 58 Pa. D. & C. 154, 161-62 (1946). And it is the situation in Maryland, where Art. 96½, § 43, the second statute which concerns us in this case, provides:

> "A written finding of presumed death made by the Secretary of War, the Secretary of the Navy or other officer or employee of the United States authorized by the federal law to make such finding or a duly certified copy of such finding shall be received in any court, office or other place in this State as evidence of the death of the person therein disclosed to be dead and of the date, circumstances and place of his death or disappearance."

It should be noted that unlike the Oregon statute, Maryland's does not modify the term evidence with attributes such as "prima facie" or "probative value."

The third statute affecting this insurance claim is Maryland's Uniform Absent Persons' Act.[1] The history of this Act and its many provisions have been fully described and elucidated in Note, 7 Md.L.Rev. 330, 335-39 (1943). Only a brief glance at the sections which govern this case are necessary here. The Act's most striking effect was to abolish in § 200 (1) the venerable common law presumption of death that attached when a person had been continuously absent and unheard of for seven years. *See 9 Wigmore on Evidence, § 2531b (1940)*

---

1. The precise "short" title of this Act, as provided in § 212, is the "Uniform Absence as Evidence of Death and Absentees' Property Act," which is reproduced with minor variations in 9 Uniform Laws Annotated, 5-12, §§ 1-16 (1957). This law was first approved by the National Conference of Commissioners on Uniform State Laws and the American Bar Association in 1939, but it has only been adopted in Maryland, Tennessee and Wisconsin.

for a vitriolic criticism of this inflexible rule. The act now provides that death is an issue of fact to be submitted to a court or jury upon the evidence. Section 200 (2) gives this new freedom of inquiry teeth by providing that known exposure of the absent person to a "specific peril of death . . . shall be considered by the court; or if there be a jury, shall be sufficient evidence for submission to the jury." Section 202 provides for the appointment of a receiver to administer the property of the missing person regardless of the possibility of death but only upon a finding of disappearance and the necessity for administration. Section 205 (1) provides that if at any time during this administration "satisfactory evidence of the absentee's death" is presented, "the court may make a final finding and decree that the absentee is dead . . . ." Even without a positive finding of death, § 205 (2) permits the court, among other things, to make a final distribution of the absentee's property five years after the finding that he has disappeared. With a finding of death or without one after five years of unexplained absence, the court may wind up the receivership (§ 207) and distribute the absentee's property (§ 208). At this time § 209 (1) authorizes the court to "direct the payment to the beneficiaries of any sums due and unpaid under any policies of insurance upon the life of the absentee, if the claim is uncontested. . . ." Section 209 (2) provides "[i]f the claim is contested, the court shall take jurisdiction of the action and shall submit to a jury, if one be called for, the issue of death of the insured and any other issues arising under the policy." Section 209 (4) allows the beneficiary to demand the cash surrender value, if any, of the policy when the claim is contested and death cannot be established. We must now attempt to make sense of the intricate interplay between these statutes and their effect on the facts of this case.

When Mrs. Haynes first presented proof of her claim to Metropolitan, the company rejected it on the grounds that 1) there was no actual evidence of death, and 2) there was no actual basis for the Army's finding of a

presumption of death, which in any event was designed largely for administrative purposes. The company at that time recommended that Mrs. Haynes continue premium payments, which she did, and that if and when the claim was honored they would refund any unearned premiums from the date of presumed death as established by the Army. The underlying basis of its refusal to pay was revealed in a letter, filed as an exhibit with the motion for summary judgment, in which the company stated:

"We made an extensive investigation into the circumstances regarding this claim at that time [1964-65] and could find no actual evidence of the death of the insured, nor could we find a basis for presumption of death. The Army regulation was drafted to provide a Declaration of Death for administration of Government insurance and Government pay purposes. Normally, the Company would accept such a declaration as evidence of death if the insured disappeared while known to be engaged in combat with the enemy, or was located in proximity to an enemy body of men. However, these circumstances did not prevail in the case of James Haynes. All facts considered, we did not feel there was a basis for allowing either a death claim or a disappearance claim."

This letter also made note of Mrs. Haynes' partial reliance at the time of the initial claim on the report of a number of bizarre murders in the area in which her husband disappeared, but there is no indication that this vague suggestion was relied upon, then or later, as possible evidence of an "exposure to a specific peril of death."

Looking at the case as it must have appeared to the parties at that time we think the insurance company's hesitation in paying the policy was not entirely unreasonable. Its reliance on the "administrative purpose only" argument in regard to the Army's report was the weakest reason for not honoring the claim, but the shortness

of the time of the absence, coupled with the completely negative results of extensive investigations into Sergeant Haynes' fate gave the insurer a strong reason to pause. Mrs. Haynes, on the other hand, was in possession of the Army's finding of death, which was admissible in evidence under Art. 96½, § 43 and which, in spite of the short lapse of time, might have warranted a finding of death under §§ 205 or 208 of the Uniform Absent Persons' Act or, for that matter, in a direct suit on the policy. If what might have happened could be a disputed material fact in the present motion for summary judgment, we believe a far different case on the question of interest would now be presented. But this is not what happened.

By her own actions, Mrs. Haynes acquiesced in the insurance company's debatable conclusion that the Army's finding of death was not substantial or trustworthy enough to constitute due proof. It is not disputed that she followed its suggestion, first, to continue paying refundable premiums until the claim ripened with a significant passage of time and, later, to utilize the Uniform Absent Persons' Act to secure an acceptable form of due proof of death. From her actions we can only conclude that the procedure followed here reflected a tacit if not open understanding between the claimant and the insurance company. Having chosen to wait four additional years to secure more substantial proof of her husband's death, she cannot now renounce the consequences of her actions.

Although the common law seven year presumption of death was involved in *New York Life Ins Co. v. Brame, supra,* we think that the appellant before us was caught in the same awkward position as the putative Widow Brame.

> "Either she could accept the statement of the company that the proof of death was not satisfactory and try and strengthen the same, or she could have insisted that it was satisfactory and that the company absolutely refuse to ac-

cept her proof of death, and, if finally refused, then she could have instituted suit, in which event the burden of proof would have rested upon the plaintiff to prove the fact of the death of her husband, or her other course, and the one which she pursued, was to wait either until she could make more satisfactory proof of death or until the expiration of seven years when she could rely upon the common-law presumption of death which arises when one has been absent from his home without being heard of for seven years." 73 So. at 809.

Mrs. Haynes did not have to wait for seven years and her position on proof was somewhat improved by the statutory admissibility of the Army's finding of death, but like Mrs. Brame

"[s]he was unwilling to bring the matter of collecting this policy to an issue with the insurance company before the expiration of this period. She therefore did not insist upon the company finally approving or rejecting her proof of death until this time." *Id.* 810.

Similarly, the insurance company in that case had only promised to pay the proceeds of the policy after it had received some satisfactory proof of death and the court concluded that it could not be liable for interest on the proceeds until the company had refused to accept the common law presumption of death as such proof.

The Maryland Uniform Absent Persons' Act has opened more options for those left behind by the missing. Having chosen one option, we do not think the appellant can make a disputed fact of an option she did not take. As we recently noted in *Kirsner v. Fleischmann,* 261 Md. 164, 172-73, 274 A. 2d 339 (1971), a disputed fact which has no bearing on the outcome of a case will not prevent the award of summary judgment.

*Judgment affirmed. Costs to be paid by the appellant.*