## HASKEW v. KNIGHTS OF MODERN MACCABEES.

No. 6957.    Opinion Filed July 25, 1916.

(159 Pac. 493.)

1. **INSURANCE—Fraternal Benefit Insurance—Proofs of Death.** In an action on a benefit certificate of a fraternal insurance association, the plaintiff must prove a reasonable compliance with the requirements of the association as to the furnishing of proofs of death.

2. **SAME.** A member of a fraternal insurance association, in his application for membership, agreed that no claim by his beneficiary should be valid until proofs were made and filed, establishing such claim in accordance with the laws, rules, and regulations of the association in force at the time such claim was made. Upon the death of the insured, and after proofs were received, the association requested that the proofs be made in a manner not provided for in the laws, rules, and regulations. **Held,** that the officers of the association were without power to impose further duties upon the beneficiary as to the manner of making the proofs of death; that the beneficiary could not be required to comply with such unwarranted request; and that from the record it appears that the proofs of death reasonably complied with the laws, rules, and regulations of the association.

3. **SAME—Waiver of Objections.** Where proofs of death are received and retained without condition or objection, except to demand compliance with certain requests of the association, which requests it had no authority to make, the association will be held to have waived any objections thereto which it might otherwise have urged.

4. **SAME—Actions—Conditions Precedent.** The failure of a fraternal insurance association to comply with the provision of its by-laws, in regard to the disapproval of death claims, excuses the beneficiary from complying with the further and related provision that all claims must be submitted to the proper tribunals

within the order before commencing a suit in law or equity, and permits such beneficiary to maintain an action on the benefit certificate in the courts of this state, without first having sought relief in the tribunals of the association.

(Syllabus by the Court.)

*Error from District Court, Bryan County;*
*Jesse M. Hatchett, Judge.*

Action by Mollie Haskew, *nee* Curington, against the Knights of Modern Maccabees. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions.

*J. M. Crook* and *W. B. Stone,* for plaintiff in error.

*Porter Newman, Frank E. Jones,* and *S. H. Kyle,* for defendant in error.

SHARP, J.   This was an action to recover $1,000 on a benefit certificate issued April 13, 1906, by defendant, Knights of Modern Maccabees, to James Henry Curington, plaintiff being the beneficiary named therein. The insured died May 22, 1906, a member in good standing of defendant order, at which time the plaintiff was a child 11 years of age. Notice of the death of the insured was sent to the association, and blank proofs of death were by- it sent to plaintiff's mother, to be filled out as directed. Said proofs of death were filled out July 3, 1906, and returned to the association, which received them July 28, 1906. The association then sent notice to plaintiff's mother that she must be appointed guardian, and sent new blank proofs of death upon which the guardian should make out the required proofs. In 1907 a copy of the appointment of plaintiff's mother, as her guardian, was sent to the association, but it still objected that the claimant's affidavit was signed by the minor child, and not by the guardian. In 1909 and 1910, it seems that

further attempts were made to comply with the requests of the association, and on April 7, 1913, new affidavits were sent to it by her. Being unable to effect a settlement, action to recover the amount of the benefit certificate was commenced July 23, 1913. Trial was had to the court, and judgment rendered for the defendant. Motion for a new trial having been overruled, plaintiff. brings error to this court.

Plaintiff in error seeks a reversal of this case upon two grounds: (1) That the court erred in finding that sufficient proofs of death were not made out by the beneficiary; (2) that the court committed error in concluding that it was incumbent upon the beneficiary to first seek redress in the order itself before commencing an action in the courts.

With regard to the first proposition, it is complained that the court erred in finding that the proofs of death made out July 3, 1906, were not a sufficient compliance with the requirements of the association. In the application for membership it was agreed by the insured as follows:

"I further agree that no claim by myself or my beneficiary shall be a valid claim against this order until proofs shall be made and filed establishing such claim in accordance with the laws, rules, and regulations of the association in force at the time such claim is made, and the failure to file such proof shall be in itself a good defense to any action which may be brought upon the certificate issued upon this application."

By the parties to this action it is stipulated and agreed that the only by-law of the society having to do with the making of proofs of death, introduced in evidence, is section 84 of the by-laws, reading as follows:

"Immediately upon the death of a life member in good standing proofs thereof shall be sent to the great record keeper, on the form prescribed by the executive committee, and under the seal and signed by the commander and record keeper of the tent of which he was a member, and must state his name in full, date of joining the order, date and cause of his death, amount contributed to the life benefit fund, and the name of the person or persons, if known, to whom the benefits are to be paid. Upon the approval and receipt of such proofs the same shall be laid before the proper officers and upon such approval· shall be paid by warrant of the order as provided in these laws."

The other stipulations regarding the furnishing of proofs of death are as follows:

"It is hereby agreed and stipulated that Beulah Curington has duly qualified and made the bond required by law, and had letters of guardianship issued to her over the person and estate of Mollie Curington, a minor, on the 14th day of October, 1906, by the county court of Fannin county, State of Texas, and the said appointment was in all respects regular and as made and provided by law in such cases.

"Statement of death of James H. Curington: On the 28th day of May, 1906, M. L. Guthrie, record keeper, A. C. Hooker, commander, and T. H. Seely, tent physician, of the local tent of Knights Modern Maccabees, of Santa Anna, Texas, prepared and sent to the great record keeper, A. M. Slay, at Port Huron, Michigan, on the forms prescribed by the executive committee of said order, a statement showing the death of James H. Curington, the cause of death, duration of last illness, the name of the tent physician, date of initiation, that deceased was a member of said tent, the name of the beneficiary, which was in the usual form.

"[Signed] M. L. Guthrie, *Record Keeper.*
"A. C. Hooker, *Commander.*

"Proof of death of James H. Curington: On the 3d of July, 1906, statement by E. L. Howard, the physician who attended James H. Curington, in his last illness, and Sam Allen, the undertaker, who buried James H. Curington, both of Brownwood, Texas, were made out on the blanks prescribed by the executive committee, in the usual form, and sworn to by said E. L. Howard, and Sam Allen, and transmitted to the great record keeper at Port Huron, Michigan. That said statement was duly signed by A. C. Hooker, commander, and M. L. Guthrie, record keeper of the local tent, at Santa Anna, Texas, but not under oath. This proof was received by the record keeper on July 28, 1908.

"The proofs of death, 1913: That on the 7th day of April, 1913, the beneficiary, Mollie Haskew, formerly Mollie Curington, but who had married prior to this date, sent to the great record keeper at Port Huron, Michigan, upon the blanks furnished by him an affidavit of herself to establish proof of the death of James H. Curington, and her interest in the policy held by him, in said order, which said affidavit showed that said affiant was the daughter of the deceased, James H. Curington, and named in the policy, carried by him in said order as the beneficiary, and on the 13th day of January, 1913, E. L. Howard made an affidavit to the effect that he was a practicing physician, and attended the said James H. Curington in his last sickness; that the cause of his death was gallstone; that said death occurred on the 22d day of May, 1906, at Thrifty, Texas; that same was filled out on blanks furnished by said order and was in proper form and sworn to."

An examination of these agreements will show that the by-law as to proofs of death was complied with. It is true there is in the record testimony of A. M. Slay to the effect that the proofs were not properly made out; but none of the facts upon which he based his statement showed that the proofs were not in reasonable compliance with the application of the insured and with section 84 of

the by-laws. That a reasonable compliance in such cases is all that is required, this court has previously held. *St. Paul F. & M. Ins. Co. v. Mittendorf,* 24 Okla. 651, 104 Pac. 354, 28 L. R. A. (N. S.) 651; *Continental Casualty Co. v. Wynne,* 36 Okla. 325, 333, 129 Pac. 16. See 2 Bacon, Benefit Societies and Life Insurance, sec. 404.

The beneficiary having complied with the requirements of the order, it was not incumbent upon her to furnish additional affidavits called for by it. In *Modern Order of Praetorians v. Kennedy,* 59 Okla. —, 157 Pac. 962, the society defended the action on the ground that the insured, prior to his death, had allowed his certificate to lapse for failure to pay dues, and in his application for reinstatement had made false warranties, whereby the defendant was released from liability under the certificate. Under the constitution of the order it was not required that a member, who had allowed his certificate to lapse for 30 days or less, should make a written application for reinstatement; and it was held in the opinion that the association did not have the right to require him, as a condition precedent to reinstatement, to make such written application, and, therefore, that any statements which he made in the application for reinstatement were not binding upon his beneficiary as warranties or otherwise. And so, in the present case, the beneficiary not being required by the laws, rules, and regulations of the association to make out and forward the additional affidavits requested, the association was not justified in refusing consideration of the claim by reason of the failure to comply with such arbitrary requests.

The testimony shows that the proofs of loss furnished by the beneficiary at different times were not returned to her, but were retained by defendant and additional affidavits de-

manded. . This is very much the state of facts which was before the court in *Pacific Mutual Life Ins. Co. v. O'Neil,* 36 Okla. 792, 130 Pac. 270. In that case, the proofs were received and retained by the insurance company without condition or objection, except to call for the names of additional witnesses who were passengers on the train at the time of the insured's death. It was held that the company by such conduct on its part waived any objection to the proofs, though they may not have been in the form required by the policy.

Under the facts of this case, was it incumbent upon the plaintiff to have first sought her relief in the tribunals of the defendant order before the institution of the present action? The court's ruling in favor of the defendant is clearly based upon the following condition of the by-laws:

"Sec. 60. The executive committee shall decide on all death claims referred to it, and if, in its judgment, any such claim is not on its face a valid one, it shall notify the beneficiary of the deceased member thereof, and give them or their attorneys an opportunity to appear before such committee within 60 days thereafter, and present such evidence as they may have to establish the justness of said claim, and the said committee shall try, hear, and decide upon the justness or validity of such claim, and such decision shall be binding on such claim, unless an appeal is taken to the great camp. The notice of the appeal from the decision of the committee must be filed with the great record keeper within 60 days thereafter. The decision of the great camp in all such cases shall be final, and no suit at law or equity shall be commenced or maintained by any member or beneficiary against the order until every remedy provided by its law has been exhausted."

In fact this position of the trial court is made evident by its finding No. 10, which reads:

"That as to whether the attempted proofs of death made from the time of the death of James H. Curington, up to and including those made in the year 1913, all combined, fulfilled the laws of the order, I make no finding, but if it should be true that they, taken together, fulfilled the requirements, still I find after the proofs of death were complete, that is, the last attempted proofs sent it, the law requiring the beneficiary to pursue the remedies therein named against the order in the tribunals of the order was not complied with and that before she can maintain this suit, it is necessary that she exhaust her remedies in the tribunals of the order."

And in the conclusions of law, the court's decision specifically states the reason for reaching its conclusion:

"I conclude that at the time of the death of James H. Curington, the plaintiff herein had a valid claim for the sum of one thousand dollars against the defendant order and that upon making proper proofs of death, and pursuing the remedy in the tribunals of the order, she would have been entitled to recover a thousand dollars, and if the tribunals of the order had failed to grant her relief she could have established her claim in the courts. But that because of such failure on the part of the plaintiff she cannot recover in this action, and judgment will be rendered for defendant."

There is no evidence in the record, nor is it contended by defendant in error, that it at any time complied with the duties placed upon it by the by-law above quoted. The executive committee made no decision as to the justness of the claim; it did not give the beneficiary an opportunity to appear before such committee within 60 days thereafter and present such evidence as she may have had to establish the justness of her claim. Under this by-law, before the beneficiary had any right of appeal to the great camp, it was necessary that the order see to it that its executive committee first passed on the claim as to its sufficiency

on its face, and if found lacking to so notify the beneficiary. Not having fulfilled its own duties, the association will not now be allowed to point out wherein the beneficiary under the policy has failed in not first prosecuting her appeal within the order. The question presented was before the California Supreme Court in *Schou v. Sotoyome Tribe, No. 12, I. O. R. M.,* 140 Cal. 254, 73 Pac. 996, and arose in very much the same manner as in the present case. It was there said:

"Before an order can hold a member to strict observance of its rules regulating procedure on appeal it must show that in all matters touching his substantial rights it has itself observed these regulations, and this the defendant did not do. Its dereliction in this regard excuses a claimant from exhausting his remedy within the rules of the order. *White v. Brownell,* 2 Daly (N. Y.) 329; *Carlin v. Drury,* 1 Vesey & Beams, 154. It is only upon such compliance with its own regulations that the defendant acquires the right to invoke the above-quoted provisions forbidding a member or other claimant from seeking the aid of the instituted courts for relief. The courts themselves are willing—nay, more than willing—that all such vexatious questions should be determined within the order itself, and they will never be found unduly swift in taking jurisdiction. But, upon the other hand, they will never refuse their aid to one whose substantial rights are suffering at the hands of a benevolent association through violence done by that association itself to its own prescribed rules."

And this rule was approved again by the California court in *Neto v. Conselho Amor Da Sociedade,* 18 Cal. App. 234, 122 Pac. 973, where it was said in the syllabus:

"The rule requiring members of a beneficial association to exhaust their remedies within the society before appealing to the courts does not apply where it has violated its own laws and regulations, so as to arbitrarily invade the rights of members."

Other authorities holding that a beneficiary need not exhaust his or her remedies within the order, where the order violates its own laws, or does not give the beneficiary an opportunity to appeal, are *Ruterbusch v. Supreme Court I. O. F.*, 162 Mich. 213, 127 N. W. 288; *Kelly v. Ancient Order of Hibernians Ins. Fund*, 113 Minn. 355, 129 N. W. 846; *Kulberg v. K. & L. S.*, 124 Minn. 437, 145 N. W. 120; *Carpenter v. Modern Woodmen of America*, 160 Iowa, 602, 142 N. W. 411; *Colley v. Wilson*, 86 Mo. App. 396.

We conclude; therefore, that the court erred in both its findings of fact and conclusions of law, and that the judgment should be reversed and remanded, with instructions to the trial court to enter judgment for plaintiff in conformity with the prayer of her petition, and the proofs submitted.

All the Justices concur.