The JOHN HANCOCK MUTUAL LIFE IN-
SURANCE COMPANY, a corporation,
Plaintiff in Error,

v.

Jane L. HIGHLEY, and Mont F. Highley, III,
and Francis B. Highley, minors, who sue by
and through Jane L. Highley, their mother,
as next friend, Defendants in Error.

No. 40805.

Supreme Court of Oklahoma.

Sept. 10, 1968.

As Corrected Sept. 23, 1968.

Ben L. Burdick, Andrew M. Coats, Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, Oklahoma City, for plaintiff in error.

Berry & Berry and Charles N. Berry, Jr., Oklahoma City, for defendants in error.

LAVENDER, Justice:

This appeal is concerned with a money judgment in favor of the widow and two

minor children of Mont F. Highley, Jr., as the beneficiaries named in two policies of insurance on his life issued by the defendant and in full force at the time of the insured's death, on claims against the insurer under the "Additional Benefit" (or "double indemnity") provisions of the two policies. The face amounts of the policies had been paid by the company without question. The cause was tried to a jury, and the jury's verdict, and the judgment of the trial court, based thereon, were for the plaintiffs and against the defendant for the amounts of the additional benefits provided for in the two policies.

Although the defendant presents its assignments of error under three propositions, it states in its reply brief herein that the sole question involved in this appeal is whether the proofs furnished by the plaintiffs to the defendant constituted the "due proof" required by the additional benefit provisions of the policies, so that the plaintiffs could be allowed to proceed with their action upon the defendant's denial of liability under the additional benefit provisions of the policies.

The pertinent provisions of the two policies are, admittedly, substantially the same. One of them provides:

"The Company hereby agrees, subject to the conditions and the exceptions and exclusions herein set forth, and subject to the payment of any unpaid balance of the premium hereunder for the uncompleted current policy year, to pay in one sum to the beneficiary of the said policy an Additional Benefit of Five Thousand Dollars upon receipt at its Home Office in Boston, Massachusetts, of due proof on its prescribed forms, directly and affirmatively showing that (1) the Insured's death was caused directly, independently and exclusively of all other causes, by a bodily injury sustained solely by external, violent, and accidental means, or, if death resulted from a disease caused by such a bodily injury, that such disease was the sole, direct and immediate result of such injury and had its

inception within thirty days from the date on which such bodily injury was sustained as aforesaid, that (2) such death occurred within ninety days from the aforesaid date, and that (3) such bodily injury was evidenced by a visible wound or contusion on the exterior of the Insured's body, unless death resulted from drowning or from an internal injury, revealed by an autopsy and consisting solely and exclusively of a contusion, a rupture or a fracture of an internal organ or part of the Insured's body.

\* \* \* \* \* \*

"EXCEPTIONS AND EXCLUSIONS: \* \* \* nor shall such Additional Benefit be payable if death results, directly or indirectly, or wholly or partially, (1) from any bodily or mental disease or infirmity \* \* \*."

The insured was injured in a head-on collision on a highway east of Midwest City, Oklahoma, between an automobile that he was driving and a pickup truck. He was taken directly to the emergency room of St. Anthony Hospital in Oklahoma City and after emergency treatment, including the suturing of a bruised, skull-deep gash, three to four inches long, on the side of his head from above his right eye toward his right ear, was admitted to the hospital as a patient. He was attended to by the same physician who had sutured the head laceration, and because of a pre-existing heart condition for which he was taking medication, was also attended to by Dr. D. who had treated and advised him in connection with heart attacks for which he had been hospitalized six years, and four years, before. After several days, he was allowed to be up and walk around his room and go to the bathroom and after several more days, was allowed to take baths unattended and to take short walks in the hallway. About midafternoon of his tenth day in the hospital, after having eaten well at breakfast and at noon, and while resting in his bed, he suffered a mild convulsion, or shaking of most of his body, of about two minutes duration, and died within a matter of minutes thereafter.

Upon learning of the death of the insured, the defendant's General Agent in Oklahoma City provided the plaintiffs with two forms of "proof of death," both of which, according to the instructions on the reverse side of one of them (Form 14R), were required in all cases of death of an insured. The pertinent instructions on the reverse side of the Form 14R read as follows:

"Proofs of death must be submitted to the Company at its Home Office, 200 Berkeley Street, Boston 17, Massachusetts, on the Company's prescribed forms of Claimant's and Attending Physician's Statements on Form 14R and Form 15R, and a Funeral Director's Statement on Form 16R when requested, and must be procured without expense to the Company."

"CLAIMANT'S STATEMENT on Form 14R—Must be completed by the person or persons to whom the insurance is payable. If there is more than one claimant, additional statements will be furnished as desired, or one claimant, if of legal age, may make claim on behalf of himself and other claimants."

"ATTENDING PHYSICIAN'S STATEMENT on Form 15R—Must be completed by the doctor in attendance during the last illness of the insured. An official death certificate will be accepted in lieu of this statement if the policy or policies are INCONTESTABLE, or if claim is not being made for any ADDITIONAL ACCIDENTAL DEATH BENEFIT."

"AUTHORIZATION FORM, No. 1797—Must be completed if DEATH occurred during the CONTESTABLE PERIOD of the policy, or any reinstatement thereof, or if claim is also made for any ACCIDENTAL DEATH BENEFIT.

"When an ACCIDENTAL DEATH BENEFIT claim is indicated, please furnish all available newspaper clippings which describe the circumstances surrounding the accident.

"The Company reserves the right to require or to obtain such additional information or certificates it deems necessary."

"POLICY—or policies must be surrendered to the Company before payment can be made. * * *."

One of the attorneys for the plaintiffs, who had been appointed, and qualified, as the executor of the last will and testament of the insured, handled the matter of furnishing the proof deemed to be required. He obtained the necessary statistics concerning the insured from the widow, and using that information and information concerning the death of the insured from a copy of the official certificate of death, certified by the State Registrar, had the form completed in the claimant's statement on Form 14R, had it signed by the widow, and transmitted it to the Company, along with the certified copy of the official certificate of death, and the attending physician's statement on Form 15R, signed by Dr. D. of Oklahoma City. Later, he sent the company a newspaper clipping concerning the collision in which the insured was injured, and at the request of the company, furnished it with a copy of the report of the autopsy mentioned in official certificate of death and in the attending physician's statement on Form 15R.

In the claimant's statement, on the company's Form 14R, the cause of death is given as "Automobile accident aggravated existing heart condition," and the claimant states "Attached death certificate gives details requested" when any injury or injuries are given as the cause of death.

The medical certification portion of the attached, official certificate of death is signed by Dr. D. as the attending physician and gives the *immediate* cause of death as "Mitral Valvular Heart Disease with Auricular Fibrillation and Terminal Ventricular Fibrillation," with the interval between onset and death being given as six years, and the "conditions, if any, which gave rise to above cause of death," being given as "Contusions to chest and head and lacera-

tion to head from automobile accident November 1, 1961," and "Shock," and the underlying cause (to be given last) as "Automobile accident [date] contributed to death by aggravating pre-existing heart disease."

In the attending physician's statement on the Form 15R, the disease or condition *directly* leading to death is given as "Mitral heart disease" with the interval between onset and death being given as six years; and the antecedent causes (morbid conditions, if any, giving rise to the direct cause of death) are given as "Contusions to chest & head & laceration scalp—auto accident," with the interval between onset and death being given as ten days. It states that an autopsy was performed and gives the results as "Calcification mitral valve of heart with enlargement of heart." It also states that, prior to the last illness, the signer of the statement had treated the insured for "Mitral valvular heart disease from 1955 to 1961," with good result up to the date of the auto accident.

The autopsy report is too lengthy, detailed, and technical to attempt to outline or summarize herein, and except for a statement therein that no examination was made of the deceased's head because the widow's permission for an autopsy excluded such an examination (which is incorrect, according to the signed permission that was received in evidence), doing so would add nothing pertinent to our discussion of the case.

The defendant's General Agent in Oklahoma City notified the plaintiffs, orally and in writing, that the company was denying liability under the additional benefit provisions of the two policies, on the basis, as he understood it, that the company felt that it had not received the proof required by the policies that the insured's death occurred within the terms of the additional benefit provisions of the policies, and that the proof submitted showed that the insured's death resulted, directly or indirectly, wholly or partially, from disease or bodily infirmity.

In denying an allegation in the defendant's answer that the death of the insured resulted, directly or indirectly, from a heart disease or an infirmity of the heart, the plaintiffs, in their reply, alleged that the death of the insured resulted from a head injury suffered in the automobile collision mentioned in their petition.

Except for the letter denying liability, none of the above mentioned instruments was introduced in evidence by the plaintiffs, but were introduced in evidence by the defendant during cross-examination of witnesses for the plaintiffs.

The evidence offered by the plaintiffs as to the cause of the death of the insured was the testimony of Dr. R. of Prairie Grove, Arkansas, and London, England, a member of the staff at the Stilwell, Oklahoma, municipal hospital, who was duly qualified as an expert in the medical fields involved, and who testified as an "opinion" witness in response to hypothetical questions. He stated that in his opinion, as such an expert, the subject died of a massive brain hemorrhage; that the hemorrhage occurred on the right side of the brain (which is the same side of the head as the laceration mentioned in the above mentioned statements and reports, which, according to the evidence, penetrated to the skull, was three to four inches long and required ten to twelve stitches to suture), from the main artery or branches of the right middle cerebral artery, and that the hemorrhage burst into the back half of the right ventricle of the brain.

On cross-examination, he testified that in his 25 years of experience in the hospital in Prairie Grove he had never seen a heart death in a fit or convulsion, and in his opinion, this man could not have died, in the manner in which he did, from mitral heart disease with auricular and ventricular fibrillation. On re-direct examination, he was asked for his opinion as to the cause of the massive hemorrhage in the brain, which, in his opinion, was the cause of death, and stated: "It is my opinion that the anticoagulent, coumadin, upon a bruised area of the right side of the deceased's brain produced the bleeding, or aided the bleeding, in the traumatized area

shown in the report to have occurred between the right eye and the right ear. [Coumadin, according to the evidence, had been administered, as ordered by the attending physician, to the insured during his stay in the hospital, including an injection on the morning of the day the insured died.] It is my opinion that a bruise of the brain, beneath that head injury, was acted upon by coumadin, to produce the bleeding which, in my opinion, was the cause of death."

Although this testimony as to the cause of death was in conflict with the testimony of medical experts who testified upon behalf of the defendant, the defendant, in effect, concedes that this testimony of the plaintiffs' expert witness would support the necessary finding by the jury that the insured's death was caused directly, independently and exclusively of all other causes, by a bodily injury sustained solely by external, violent, and accidental means, which was evidenced by a visible wound or contusion on the exterior of the insured's body, within the contemplation of the additional death benefit provisions of the policies, so that if the cause was properly allowed to go to the jury in the first place, the verdict and judgment for the plaintiffs would be supported by the evidence.

The defendant simply contends, in effect, that the cause should not have been submitted to the jury, because the evidence establishes beyond question that the instruments submitted by the plaintiffs to the company not only failed to meet the conditions precedent to the company's liability under the additional benefit provisions of the two policies, prescribed in the policies, but also show affirmatively that the insured's death came within the express exclusion from such benefits that is quoted above, so that *as a matter of law*, the plaintiffs failed to establish any cause of action against the defendant.

From a consideration of all of the briefs of the parties, it appears that there is very little, if any, disagreement between them as to the principles of law that should be applied to the situation.

■ There is really no dispute between the parties that the policy provision concerning proof is valid and constitutes a condition precedent to the company's liability for the additional benefits in question, unless the same be waived by the company [both parties citing Franklin Life Ins. Co. v. Fisher (1933), 164 Okl. 193, 23 P.2d 151; Metropolitan Life Ins. Co. v. Keith (1935), 170 Okl. 440, 41 P.2d 121; American Home Mutual Life Ins. Co. v. Gunn (1947), 199 Okl. 220, 184 P.2d 766].

■■ Neither is there any dispute contrary to plaintiffs' contention that substantial compliance with the policy requirements of proof of loss is all that is required [Insurance Company of North American v. Cochran et al. (1916), 59 Okl. 200, 159 P. 247], and that such provisions of an insurance policy do not contemplate that a claimant shall be required to furnish to the insurer more, or a higher grade of, proof than would suffice to establish a claim in a court of law, but contemplate the furnishing of no more proof than would be necessary to establish a prima facie case [Aetna Life Insurance Co. v. Milward (1904), 118 Ky. 76, 82 S.W. 364, 68 L.R.A. 285].

■ Both parties agree that the law requires of the insurer good faith and fair dealing in its transactions with the insured, and hence the insurer is bound to promptly advise the insured of any defects of a formal character in the proofs or notice furnished in season, to the end that the insured may have an opportunity to correct them, and that an insured has the right to assume, until advised to the contrary, that the proofs of loss served by him were sufficient [White v. Safe Guard Insurance Co. of New York (1923), 94 Okl. 178, 221 P. 57].

■ We note here that in its reply brief in this court the defendant mentions that the plaintiffs never have furnished to the company the "Authorization Form, No. 1797" that is required by the instructions on the reverse side of its Form 14R in the event a claim is made for any accidental

death benefit. The company's denial of liability under the additional accidental death benefit provisions of the two policies made no mention of this formal defect in the proof, and there is nothing in the record to indicate that it was ever called to the attention of the plaintiffs after the policies and proof documents were delivered to the company. Under White v. Safe Guard Insurance Co. of New York, supra, the company waived this formal defect.

■ The parties also agree that where there is no conflict in the evidence concerning the proofs furnished to the insurer the question of whether the proofs furnished meet the condition precedent to liability is a question of law for the court (White v. Safe Guard Insurance Co. of New York, supra). There is no contention by either party that there was any conflict in the evidence as to the proofs submitted to the company. Their only dispute concerns the legal effect of the proofs submitted, with the plaintiffs contending that they meet the condition precedent to liability and the defendant contending that they do not.

■ We are unable to agree with defendant that the proofs submitted were, as a matter of law, insufficient to comply with the provisions of the policy in question.

The proof of death states that the "Cause or causes of death were: Automobile accident aggravated existing heart condition * * *." It refers to the date of the accident as preceding the insured's death by ten days and refers to the death certificate (a copy of which was furnished) for "details requested" by question 4(c) on the forms furnished by the insurer. That question is: "If any injury or injuries are given as the cause of death, state (1) the date of the injury or injuries; (2) fully and precisely describe each injury; (3) fully and precisely state all the material facts, including the cause or causes of the injury or injuries and the exact circumstances under which the injury or injuries were inflicted or sustained and (4) whether or not there was a visible wound

or contusion on the exterior of the deceased's body, and if there was, fully and precisely describe its precise nature and the parts affected."

Turning now to the death certificate and that portion of it to which the claimant referred in response to question 4(c) we find: "Contusion to chest and head and laceration to head from automobile accident * * *. Shock. * * *." As to the attending physician's opinion (he completed the death certificate) concerning the cause of death, we find: "Automobile accident * * * contributed to death by aggravating pre-existing heart disease." And, as the "immediate cause of death: (a) Mitral Valvular Heart Disease with Auricular Fibrillation and Terminal Ventricular Fibrillation."

It is admitted that after these proofs were submitted a period of several months elapsed before the defendant denied liability under its policy. During this interval the defendant requested and was furnished a copy of the autopsy report on the insured and a newspaper clipping which contained a description of the accident in which the insured had been involved.

■ The cases relied upon by defendant in its brief are distinguishable from the facts in this cause. In Wachtel v. Equitable Life Assurance Society of United States 266 N.Y. 345, 194 N.E. 850, it was stated that the insurance company was justified in denying liability because "* * * the proofs submitted, and independent investigation alike, showed that no such liability existed." In other cases the insured's injuries were minor, no mention at all of an accident having occurred; no data furnished concerning any accident; *only* proof was of death by disease; there was "no intimation" of an accident having occurred and in one case the proofs showed suicide as the cause of death and nothing else indicated. These cases are not applicable here where the most that can be said for defendant's position is that the proofs did not reflect the expert medical opinion of the individual who testified at the trial on

plaintiff's behalf. His testimony and conclusion that insured died as a result of a concussion suffered in the automobile accident was arrived at after study of the hospital charts, including the nurses' notes and attending doctors' comments. This material was readily available to the company and we do not deem a failure to refer to it as supporting the claim for double indemnity benefits fatal to the beneficiary's right to bring the action. Such material, according to the record, disclosed that the insured was involved in an auto-truck headon collision; that as a result he received a laceration to his head three or four inches long; that he was in a dazed condition ("shock", as described on the proof of death); that he remained in the hospital continuously until his death ten days later and that he died in a convulsion. The autopsy report also did not furnish support for the conclusion of the attending physician that the insured died as a result of heart disease (or even that such disease was a substantially contributing factor).

■ We believe the policy requirements for the furnishing of proof of death should be liberally construed in favor of the insured consistent, however, with the purposes of such a provision which are to provide the insurance company with information from which it may intelligently arrive at a decision of its rights and liabilities and to enable it to decide whether it shall pay the amount of the policy to the one claiming it (29A Am.Jur. § 1374). We do not think such provision should be accorded a technical interpretation such as to require the submission of documentary material which it subsequently appears was the basis for an expert medical witness to conclude that the insured's death was within the policy requirements.

In Continental Casualty Co. v. Burden, 178 Ark. 683, 11 S.W.2d 493, 61 A.L.R. 1192, the question was whether proofs of death had been furnished at all where they had been handed to an agent of the company. The court held the requirements of the policy concerning furnishing of proof of death under an accidental death policy were complied with, considering the admission by the company that it received a copy of a certificate of death, notwithstanding the death certificate reflected the decedent died of a heart failure and the claim for accidental death was based on heat exhaustion.

That the company could not conclusively decide that the beneficiary had no right of action because in its opinion the proof submitted was not sufficient is well established. Aetna Life Ins. Co. v. Moyer, 3 Cir., 113 F.2d 974, which also contains this statement: "The policy does not leave it to the caprice of the company to reject arbitrarily any evidence which might reasonably inform the company of its insured's disability and, hence, of its own possible liability."

■ The defendant's contention that the claimant did not offer any evidence rebutting the physician's statement as to the cause of insured's death assumes that she adopted that conclusion as her own view. Such was not the case. She reported the accident and asserted that it was the *cause* [notwithstanding the accident "aggravated" an existing heart condition] of the insured's death. She never wavered from that contention and supported it at the trial by competent evidence which the company tacitly concedes is sufficient to sustain the verdict in her favor.

The defendant submitted to the jury its defense, namely that the insured died as a result (at least partly) of heart disease. The jury found otherwise. We see no reason to disturb that verdict and the judgment of the court based thereon.

Judgment affirmed.

The case-made includes a copy of a supersedeas bond, executed by the defendant, as principal, and American Surety Company of New York, a corporation, as surety. Pursuant to the provisions of 12 O.S.1961, § 971, judgment is hereby rendered against said American Surety Company of New York, a corporation, in favor of the plaintiffs in the trial court, Jane L. Highley, and Mont F. Highley III and Francis B.

Highley, in the principal amount of $6,-000.00, together with interest thereon at the rate of six per centum per annum from the 1st day of February, 1962, until paid, and all costs of the action in the trial court and on this appeal; and the trial court hereby is directed to enter and enforce this judgment against said surety as if rendered in that court.

All the Justices concur.