**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 21 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ANN I. EVANS,

      Plaintiff-Appellant,

v.

KIRKE-VAN ORSDEL, a division of
Seabury & Smith, Inc.; ANNUITY
BOARD OF SOUTHERN BAPTIST
CONVENTION,

      Defendants-Appellees.

No. 04-6054
(D.C. No. 03-CV-383-T)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **LUCERO** , **McKAY** , and **PORFILIO** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Ann Evans initially brought this action in state court alleging the wrongful denial of her claim for benefits under a long term disability benefit plan underwritten by defendant Annuity Board of the Southern Baptist Convention and administered by defendant Kirke-Van Orsdel. Defendants removed the action to federal court under 28 U.S.C. § 1441, and then moved for summary judgment on the grounds that (1) plaintiff's claim for recovery of benefits under the plan was barred by her failure to comply with a plan provision mandating exhaustion of all claim review procedures before recourse to legal action and (2) plaintiff's claim for bad faith administration of the plan was not recognized under Oklahoma law and was factually unsupported in any event. The district court agreed on both points and dismissed the case. Plaintiff now appeals that decision. We review the district court's interpretation of the plan and consequent determination on summary judgment de novo, *Old Republic Ins. Co. v. Durango Air Serv., Inc.*, 283 F.3d 1222, 1225-26 (10th Cir. 2002), and affirm.

### Claim under Plan – Exhaustion Requirement

While federal procedural law prescribes our standard of review, state substantive law governs the contract issues presented.[1] *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1106 (10th Cir. 1991). Under Oklahoma

---

[1] Benefit plans for church employees are not governed by the Employee Retirement Income Security Act, *see* 29 U.S.C. §§ 1002(33)(A), 1003(b)(2).

law, if a contract's terms "are unambiguous, clear and consistent, they are accepted in their plain and ordinary sense and the contract will be enforced to carry out the [expressed] intention of the parties." *S. Corr. Sys., Inc. v. Union City Pub. Sch.*, 64 P.3d 1083, 1088 (Okla. 2002). "The interpretation of a contract, and whether it is ambiguous is a matter of law for the Court to resolve," and "[t]he Court will not create an ambiguity by using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on the provision." *Id.* at 1088-89.

The exhaustion provision at issue reads in pertinent part as follows:

A claimant may appeal KVI's [defendant Kirk-Van Orsdel's] final denial of a claim by filing an appeal with the Annuity Board within 60 days of the date of the denial. . . .

Claim appeals must be submitted in writing to:

Claims Manager
Insurance Division
Annuity Board of the Southern Baptist Convention
P.O. Box 2190
Dallas, Texas 75201-2190

. . . .

The decision of the [Appeals] Committee [of the Annuity Board] will be made in its sole discretion and will be final and binding on all parties. You and your Covered Dependents must file a complete and timely claim and exhaust all claim review procedures before filing a suit in a court or taking any other legal action to obtain benefits under the Plan.

App. at 60.

Plaintiff sought benefits under the plan by filing an application with Seabury & Smith, Inc. (S&S), the corporate parent of the plan administrator, defendant Kirke-Van Orsdel. The application was denied by a letter informing her that she had a right to appeal. The letter stated that the appeal "must be in writing and should identify issues and other comments or additional evidence you wish considered," but did not specify where it was to be sent or who would be resolving the matter. *Id.* at 195. Plaintiff sent a letter of appeal to S&S, *id.* at 196, and thereafter provided additional evidence in support of her claim. These materials were submitted by S&S "to an independent consultant for a re-review to determine [her] disability status." *Id.* at 167. In the end, "[i]t was the reviewer's opinion that there is no evidence for total disability as defined by the plan," and S&S concluded anew that benefits were not available under the plan. *Id.* at 168. Plaintiff was once again told of her right to appeal, in the same general terms used after the initial decision. *Id.* She then commenced this action, without ever submitting an appeal to the Annuity Board of the Southern Baptist Convention, the plan's underwriter and designated final authority over coverage disputes, per the claim exhaustion provision quoted above.

Plaintiff argues several points to justify/excuse her noncompliance with that provision. First, she notes that other references in the plan to the claimant's right to appeal use permissive language – the claimant "may appeal" – and insists

that this is inconsistent with any mandatory interpretation of the exhaustion provision. The district court's cogent refutation, which plaintiff never comes to grips with in her brief, needs no further annotation by us:

> Plaintiff is correct that the Plan does not mandate an appeal of every decision; obviously, a claimant can accept a denial of her claim and take no further action. However, a claimant intending to pursue litigation on her claim is required to complete the appeal process. Plaintiff ignores the additional express provision with regard to the filing of litigation to enforce rights under the Plan; that provision clearly and expressly states that all claim review procedures "must" be exhausted before a suit is filed or legal action is taken to obtain Plan benefits. Therefore, although pursuit of an appeal is not mandated by the Plan *per se*, it is mandated if the claimant intends to pursue legal action. Plaintiff's attempt to argue otherwise ignores the plain language of the Plan.

App. at 225-26 (citation omitted).

Plaintiff also contends that, in any event, she did appeal the initial denial of benefits and that, because the plan does not specify how many appeals must be taken, this should have sufficed to satisfy the exhaustion requirement. This whole line of argument is misdirected. The *number* of appeals taken or foregone is not the issue; however simple or complicated the initial process of evaluation by the plan administrator may be, the plan specifies that the determination of the administrator must at some point be appealed to the underwriter (the Annuity Board) for a final decision before any legal action on the plan may be instituted. Plaintiff's premature resort to court bypassed this critical condition.

Plaintiff argues that her appeal to S&S should qualify as the requisite appeal to the Annuity Board because, under a services agreement between S&S and the Annuity Board, S&S agreed to "refer to the Annuity Board for final decision any appeal of a decision by [S&S] concerning a claim for Benefits in accordance with the claims appeal procedures of the Plan[]." *Id.* at 172. This contention is undercut by two distinct considerations. First of all, the quoted provision is not in the plan offered to plaintiff by her employer, but in a collateral contract between the plan's underwriter and its administrator, and plaintiff makes no legal argument as to why she may invoke the alleged nonperformance by one of these parties under their contract to excuse her failure to comply with the plain terms of the plan. In any event, both the plan and the services agreement indicate that the administrator has its own internal review process distinct from any subsequent appeal to the Annuity Board, *see id.* at 60 (claim review provision of plan referring to "the initial and subsequent denial of benefits by [S&S]"), 172 (provision of services agreement stating that S&S "shall maintain its standard internal claims appeal review process"). Thus, in effect, plaintiff insists that S&S should have bypassed its own review process and instead initiated an appeal to the Annuity Board on her behalf to anticipate and cure her future failure to appeal as directed by the plain terms of the plan. This argument is meritless.

Plaintiff also seeks to excuse her noncompliance by assigning blame to the Annuity Board, arguing that once it became aware that she had begun a review proceeding with S&S, the Annuity Board should have stepped in, terminated the ongoing process before S&S, and sua sponte initiated its own final review. This argument is not supported factually by reference to any plan provision suggesting such pre-emptive behavior by the Annuity Board would even be permissible, let alone obligatory, nor is it supported legally by reference to any relevant case authority. Plaintiff cites *Haskew v. Knights of Modern Maccabees*, 159 P. 493 (Okla. 1916), for the proposition that a beneficial association may be held to have waived a member's noncompliance with remedial conditions if the association has violated its own laws and regulations, but plaintiff has not shown that the Annuity Board violated any duty here.

Plaintiff's argument that she substantially complied with the exhaustion requirement is equally unavailing. The plan makes it clear that a claim is not exhausted by any determination of the administrator; the claimant must appeal the administrator's decision to the Annuity Board itself before resorting to legal action. We agree with the district court that the case law relating to substantial compliance relied on by plaintiff, which deals with proof-of-loss requirements and holds that prima facie proof is sufficient, *see John Hancock Mut. Life Ins. Co. v. Highley*, 445 P.2d 241, 246 (Okla. 1968) (following *Ins. Co. of N. Am. v.*

-7-

*Cochran* , 159 P. 247 (Okla. 1916)), "does not support plaintiff's contention that failing to pursue the next level of a required appeal procedure should be sufficient to 'exhaust all claim review procedures' as provided in the Plan." App. at 226. Plaintiff does not merely seek some moderation of evidentiary or proof standards associated with the required appeal to the Annuity Board; she seeks to excuse her wholesale failure to take the appeal. If the concept of substantial compliance were stretched that far, the requirement of *exhaustion* of remedies would lose its substance.

Plaintiff also contends that the exhaustion provision in the plan violates Okla. Stat. tit. 36, § 4505, which states that group insurance policies may not have "any provision relative to notice or proof of loss, or to the time for paying benefits, or to the time within which suit may be brought on the policy, which is less favorable to the individuals insured than would be permitted by the standard provisions required for individual accident and health insurance policies" set out in Okla. Stat. tit. 36 § 4405. Plaintiff argues that the plan's exhaustion provision is invalid under this scheme (though § 4505 and § 4405 do not even address exhaustion), because the standard three-year limitations period prescribed in § 4405(A)(11) is allegedly contravened by the plan's requirement "that an insured take an as-of-yet unspecified number of intra-plan appeals from a claim denial before they are entitled to bring an action." Aplt. Br. in Chief at 28. Once again,

plaintiff's objection fails to focus on the exhaustion deficiency at issue in this case. However many times a claimant might be allowed to offer additional evidence and ask the administrator to reconsider its decision, the only specified condition on legal recourse is completion of an appeal from the administrator's decision to the Annuity Board. There is nothing inherently inconsistent between that requirement and a three-year limitations period, and plaintiff neither cites to any authority recognizing such an inconsistency as a legal matter nor points to any evidence of record demonstrating such an inconsistency in practice.

Plaintiff argues in passing that an exhaustion clause in a contract "cannot prevent suit from being brought," citing Okla. Stat. tit. 15 § 216. Aplt. Br. in Chief at 26 n.7. [2] This statute directs that "[e]very stipulation or condition in a contract, by which any party thereto is restricted from enforcing his rights under the contract by the usual legal proceedings in the ordinary tribunals, or which limits the time within which he may thus enforce his rights, is void." As just noted above, there is no inherent limitations problem raised by the exhaustion provision in the plan. And, as for plaintiff's being restricted from enforcing rights under the contract, only an extremely broad interpretation of the idea of

_____

[2] Plaintiff goes on to suggest that such a clause is "also likely invalid" under state constitutional provisions guaranteeing a right to jury trial. Aplt. Br. in Chief at 26 n.7. No remotely relevant case authority is cited for this facially dubious proposition. In any event, the point was not raised below, *see* R. doc. at 136, and thus is waived. *Monreal v. Potter*, 367 F.3d 1224, 1231 (10 th Cir. 2004).

"restricted" would suggest that a mere exhaustion provision impermissibly curtails one's right to enforce contract rights.  Plaintiff cites no authority to suggest such an extreme view.  On the contrary, the case law indicates that the statute voids only those provisions that *preclude* judicial enforcement of a contract – by, for example, compelling binding arbitration of claims or requiring the consent of one contracting party before another could bring suit – not those that merely condition enforcement on practically satisfiable procedural prerequisites, such as providing timely notice of a claim upon which suit is anticipated.  *See, e.g.*, *Cannon v. Lane*, 867 P.2d 1235, 1238-39 (Okla. 1993); *Keel v. MFA Ins. Co.*, 553 P.2d 153, 157 (Okla. 1976); *Midland Valley R.R. Co. v. Ezell*, 116 P. 163, 164 (Okla. 1911).  While the cases do not specifically address exhausting an administrative claim procedure (that, if favorable, would obviate any need to bring legal action and that, if not, would impose no impediment to such action), the thrust of the law is decidedly against plaintiff's position.

In sum, plaintiff's claim under the plan is undercut by her unexcused failure to satisfy the plan's exhaustion requirement.  The situation is somewhat different, however, in relation to her bad faith claim.  As she notes, this is a tort cause of action not naturally encompassed within the claim review procedure.  We need not resolve the exhaustion question as to this claim, however.  The district court rejected the claim on the merits, and we do so as well.

**Bad Faith Claim**

The district court rejected plaintiff's claim against the plan administrator for bad faith because, at the time of decision, the Oklahoma courts "ha[d] not recognized a bad faith cause of action against a third-party administrator [and] [p]laintiff offer[ed] no persuasive authority . . . that the Oklahoma Supreme Court would recognize such a claim." App. at 227. Less than a week later, the Oklahoma Supreme Court issued *Wathor v. Mutual Assurance Administrators, Inc.*, 87 P.3d 559 (Okla. 2004), adopting this circuit's analysis in *Wolf v. Prudential Insurance Co. of America*, 50 F.3d 793 (10 th Cir. 1995), to hold that "[i]n a situation where a plan administrator performs many of the tasks of an insurance company, has a compensation package that is contingent on the approval or denial of claims, and bears some of the financial risk of loss for the claims, the administrator has a duty of good faith and fair dealing to the insured." *Wathor*, 87 P.3d at 563. This fortuitous circumstance does not persuade us to disturb the district court's disposition, for a couple of reasons.

First of all, plaintiff waived any argument for reversal based on *Wathor* by not even mentioning the case in her opening brief, submitted three months after *Wathor* was issued. Indeed, although she initially specified the bad faith claim as one of the issues presented for review, she did not subsequently argue the matter in her opening brief. An issue listed but not argued in an opening brief is waived.

-11-

*Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1231 (10 th Cir. 1990). In their answer brief, defendants noted plaintiff's omission but went on to argue why the claim recognized in *Wathor* was in any event unavailable as a matter of law under the circumstances presented here. In reply, plaintiff finally addressed the conditions specified in *Wathor* for availability of a bad faith claim against a plan administrator. Consistent with the waiver rule invoked above, however, belated attention to an issue in a reply brief ordinarily does not preserve a matter for review. *Stump v. Gates*, 211 F.3d 527, 533 (10 th Cir. 2000).

In any event, we agree with defendants that there is no basis in our record to substantiate application of *Wathor* here. There is no evidence that the plan administrator benefitted financially from the disposition of claims or shared in the risk of loss involved, and the absence of these factors renders a bad faith claim unavailable as a matter of law. *See Wathor*, 87 P.2d at 563. While *Wathor* had not yet been decided during the summary judgment proceedings here, plaintiff, who relied on *Wolf* for her bad faith claim, *see* App. at 121, had every reason to muster whatever evidence there might have been to support bad faith liability under *Wolf* then and, hence, under *Wathor* now.

Plaintiff notes, however, that defendants did not argue the unavailability of the bad faith claim, legally or factually, until their summary judgment reply brief (when they were responding to her reliance on *Wolf*, *see* App. at 220-21), and

-12-

complains that she did not have a chance to obtain discovery and dispute the issue. To the extent this objection concerns the inadequacy of discovery, it is undercut by plaintiff's failure to file an affidavit under Fed. R. Civ. P. 56(f) to bring any difficulty in that regard to the district court's attention. *See DiCesare v. Stuart*, 12 F.3d 973, 979 (10 th Cir. 1993). To the extent it concerns the belated emergence of the bad faith issue per se, plaintiff could have insisted on filing a surreply brief, *see Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164-65 (10 th Cir. 1998); *see, e.g.*, *Meiners v. Univ. of Kan.*, 239 F. Supp. 2d 1175, 1179 n.1 (D. Kan. 2002), but she also did not avail herself of this procedure.

Finally, plaintiff insists that the underwriter Annuity Board may be liable for bad faith regardless of any limits on such claims with regard to third-party administrators like S&S. But she advances no argument whatsoever as to why she should be able to pursue a bad faith claim against the very party who, as a result of her own noncompliance with the review procedure required in the plan, had no opportunity to determine the coverage question giving rise to this lawsuit. In any event, given that the interim change in law complicating the third-party administrator claim against S&S did not affect the analytically distinct bad faith claim against the Annuity Board, plaintiff's failure to address the latter in her opening brief is even more egregious. The issue is waived and warrants no further discussion.

The judgment of the district court is AFFIRMED.

Entered for the Court

John C. Porfilio
Circuit Judge